2014 CO 56

**Ricardo Jaime SANCHEZ, Petitioner,**

**v.**

**The PEOPLE of the State of Colorado, Respondent**

**Supreme Court Case No. 11SC215**

Supreme Court of Colorado.

June 30, 2014

Attorneys for Petitioner: Douglas K. Wilson, Public Defender, Joseph P. Hough, Deputy Public Defender, Denver, Colorado.

Attorneys for Respondent: John W. Suthers, Attorney General, Emmy A. Langley, Assistant Attorney General, Denver, Colorado.

JUSTICE COATS delivered the Opinion of the Court.

¶1 Sanchez petitioned for review of the court of appeals' judgment in *People v. Sanchez*, No. 08CA630, 2011 WL 486489 (Colo. App. Feb. 10, 2011) (not published pursuant to C.A.R. 35(f)), which affirmed his conviction of first degree murder. Among other things, the defendant assigned error to the district court's denial of his motion to suppress, as a violation of his *Miranda* rights, statements he made to the New Mexico police shortly after his arrest. In particular, he objected that he was not advised and did not understand that he would not ultimately be obligated to pay for an appointed attorney. The court of appeals rejected the defendant's assignment of error, concluding that the advisement he received concerning his right to appointed counsel was sufficient to convey to him that if he could not afford one, an attorney would be provided free of charge.

¶2 Because *Miranda v. Arizona* does not require that a suspect be advised of or understand that he will not ultimately bear any liability for the cost of an attorney appointed to assist him during custodial interrogation; and because the defendant was adequately advised and understood that if he requested the assistance of an attorney to consult with him and be present during custodial interrogation, but could not afford one, one would nevertheless be appointed for that purpose, the judgment of the court of appeals is affirmed.

## I.

¶3 Following his apprehension and arrest in New Mexico, Ricardo Sanchez was charged with first degree murder for the September 20, 2006 shooting of a coworker ten to fifteen times at close range. At trial, he asserted self-defense but was nevertheless convicted of first degree murder. The district court subsequently sentenced him to life in prison without the possibility of parole.

¶4 Prior to trial, the defendant moved to suppress the statements he made to the New Mexico police following his arrest. In those

statements, he confessed to the shooting and admitted that he purchased a gun and bullets to kill the victim, who had been taunting and harassing him and who, the day before the murder, threatened to kill him and rape his wife. The defendant alleged that his statements should be suppressed because he was not adequately advised according to *Miranda v. Arizona* and did not understand that before speaking to the police, he was entitled to the services of an attorney, free of charge.

¶ 5 At the suppression hearing, the officer who interrogated the defendant testified that he conducted an extensive interview in Spanish, the defendant's only, and the officer's first, language. The officer testified that after confirming the defendant's ability to read Spanish, he gave the defendant a written advisement and waiver of rights form in Spanish. He also testified that the defendant read the form, initialed after each line, and signed the waiver portion.

¶ 6 In his testimony, the officer translated the Spanish *Miranda* form, indicating that it informed the defendant: that he had the right to remain silent; that anything he said could be used against him in court; that he had the right to consult with an attorney before any questions were asked; that if he chose to answer questions without an attorney present, he had the right to stop answering questions whenever he wanted; and that he had the right to stop answering questions until he had an attorney present. The officer also translated the waiver section of the form as providing, in part, "I am willing to give a statement and answer questions. I do not want a lawyer present at this time." The officer further testified that in response to a question, he informed the defendant that "if he could not afford [an attorney], one would be appointed for him."

¶ 7 The officer also reviewed the relevant portion of the transcript of his recorded conversation with the defendant, which had been translated by a third-party translator as follows:

> Defendant: But that, it is not very necessary a lawyer because a lawyer is going to want money, true? Decide a lawyer, because the lawyer is going to want money, true?
>
> Officer: Well, the thing is yes, they are, if you don't have the means of hiring a lawyer one would be assigned, but the thing is, where we are, we are going to talk soon.
>
> Defendant: It is better like this, true?
>
> Officer: We[,] I do not say what is better. If you are ready, I . . .
>
> Defendant: Sure, why go around it, true, if finally, what was done, was done.[1]

¶ 8 The district court denied the defendant's motion to suppress his statements, concluding, as pertinent here, both that the officer "adequately informed [the defendant] that even though lawyers are expensive, if he couldn't afford to hire one, one would be assigned to him," and that the defendant's *Miranda* waiver was valid. The district court specifically found that the defendant did not seem confused about the officer's explanation concerning his right to the assistance of a court-appointed attorney and that he did not ask any further questions. The court also found that the defendant volunteered information and had no apparent reluctance in giving a full account of the events.

¶ 9 Following his conviction, the defendant appealed, challenging, among other things, this suppression ruling. With one member of the panel dissenting, the court of appeals concluded that the record supported the findings and conclusions of the district court. More specifically, the court of appeals found that the officer's explanation concerning the

---

1. Following oral argument in this case, because questions arose about the translation of the interview between the officer and the defendant, this court ordered a new, certified translation, which provided:

   Defendant: But um, it's not so necessary to have an attorney because an attorney is going to want money, right?

   Officer: Well, the things, well if they are, if not, uh huh. If you don't have the means to use an attorney one will be appointed to you, but the thing is that right now where we are, if we are going to talk, we are going to talk right now.

   Defendant: It's better right?

   Officer: Well, I think it's better. If you are willing to and . . .

   Defendant: I mean, let's not beat around the bush, right? If in the end what is done is done.

appointment of an attorney, including the phrase, "if you don't have the means," adequately conveyed to the defendant that an attorney would be provided free of charge if he could not afford one.

¶ 10 The defendant petitioned for a writ of certiorari.

## II.

¶ 11 There are two federal constitutional bases for the requirement that a confession be voluntary in order to be admitted into evidence: the Due Process Clause of the Fourteenth Amendment and the Fifth Amendment privilege against self-incrimination. *Dickerson v. United States,* 530 U.S. 428, 433, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). The due process or "voluntariness" test takes into consideration the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation—to determine whether the accused's will was actually overborne by coercive police conduct. *Id.* at 434, 120 S.Ct. 2326; *People v. Valdez,* 969 P.2d 208, 211 (Colo.1998). However, because the inherently coercive nature of custodial police interrogation heightens the risk that an individual will not be accorded his privilege under the Fifth Amendment, the Supreme Court has also laid down concrete procedural safeguards governing the admissibility of statements given during custodial interrogation. *See Miranda v. Arizona,* 384 U.S. 436, 467–79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Statements made during custodial police interrogation are admissible in the prosecution's case in chief only if the person making them has already been properly advised concerning his right to remain silent and his right to have a lawyer present, and if he has made a voluntary, knowing, and intelligent waiver of those rights. *See id.* at 444, 86 S.Ct. 1602.

¶ 12 In *Miranda,* the Court held that unless other fully effective means were adopted to notify the person of his right of silence and to assure that the exercise of the right would be scrupulously honored, certain specific measures would be required. *Id.* at 478–79, 86 S.Ct. 1602. Specifically, the measures adopted by the Court for this purpose were that prior to any custodial interrogation, a suspect must be warned that he has the right to remain silent; that anything he says can be used against him in a court of law; that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. *Id.* at 479, 86 S.Ct. 1602. It further specified that opportunities to exercise these rights must be afforded to the suspect throughout the interrogation. *Id.* Rather than requiring some "talismanic incantation," however, the Court made clear that the appropriate inquiry concerning the adequacy of such advisements would simply be whether these rights had been reasonably conveyed to the suspect. *Duckworth v. Eagan,* 492 U.S. 195, 203, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989) ("The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda.*'") (quoting *California v. Prysock,* 453 U.S. 355, 361, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981)); *Prysock,* 453 U.S. at 359, 101 S.Ct. 2806 (*"Miranda* itself indicated that no talismanic incantation was required to satisfy its strictures.").

¶ 13 While the Supreme Court in *Miranda* referred to the prosecution's obligation to demonstrate the adequacy of these warnings and their waiver as a "heavy burden," 384 U.S. at 475, 86 S.Ct. 1602, it has subsequently made clear that in terms of a burden of proof it intended by this language no more than the preponderance-of-the-evidence burden required to establish the voluntariness of a statement itself, *Colorado v. Connelly,* 479 U.S. 157, 168–69, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). In addition to the voluntariness of the waiver of *Miranda* rights, however, the Court required, as with constitutional trial rights generally, that in order to be effective, any waiver of the right to silence and the right to counsel guaranteed by *Miranda* would have to also be knowing and intelligent. With regard to the waiver of these rights, the Court's ensuing clarifications have been meaningful in two particular respects. First, in order for a waiver of *Miranda* rights to be considered knowing and intelligent, the suspect must understand the warnings specifically formu-

lated in *Miranda* as safeguards for the privilege themselves, but need not appreciate everything that might be useful in making the decision to waive those rights and speaking to the police, or the tactical significance of doing so. *E.g., Colorado v. Spring,* 479 U.S. 564, 574–77, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) (holding that a suspect need not be advised or know that he will actually be questioned about a murder, because "[t]he Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege"); *Moran v. Burbine,* 475 U.S. 412, 421–22, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) ("[W]e have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights."). Second, an effective waiver of *Miranda* rights need not be express; rather it may be inferred from a showing that the suspect understood his rights and entered into a "course of conduct indicating waiver." *Berghuis v. Thompkins,* 560 U.S. 370, 384, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010) (explaining *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)).

■ ¶ 14 The right to counsel guaranteed by *Miranda,* as a safeguard for the privilege against self-incrimination during custodial interrogation, has been referred to as the "Fifth Amendment" right to counsel to distinguish it from the right to counsel guaranteed by the Sixth Amendment, which arises only upon the initiation of formal proceedings, but therefore entitles a criminal defendant to the effective assistance of counsel at every critical stage of the proceedings. *McNeil v. Wisconsin,* 501 U.S. 171, 175–78, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); *People v. Vickery,* 229 P.3d 278, 280 (Colo.2010). Unlike the latter, the purpose of the former guarantee is simply to safeguard a suspect's "desire to deal with the police only through counsel." *McNeil,* 501 U.S. at 178, 111 S.Ct. 2204 (quoting *Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)). As *Miranda* itself emphasized, however, the police are not required to keep defense counsel on retainer for the benefit of suspects, and instead, they will have fulfilled

their obligation to a suspect who invokes his right to the presence of counsel during custodial interrogation as long as they refrain from interrogating him without first providing counsel to consult with him about the privilege and be present with him, should he decide to waive his right to silence and speak with them. *See* 384 U.S. at 474, 86 S.Ct. 1602.

■ ¶ 15 Because the privilege against self-incrimination secured by the Constitution applies to all individuals, the Court reasoned further that the denial of counsel to indigent suspects at the time of interrogation, while allowing an attorney to those who can afford one, would be no more supportable by reason or logic than the similar situation at trial and on appeal struck down in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). *Miranda,* 384 U.S. at 472–73, 86 S.Ct. 1602. It therefore held that "[i]n order *fully to apprise* a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him." *Id.* at 473, 86 S.Ct. 1602 (emphasis added). Without this additional warning, the admonition concerning the right to consult with counsel might be understood as meaning only that the suspect could consult with a lawyer if he had the funds to obtain one. *Id.*

■ ¶ 16 Not only did the warnings prescribed by *Miranda* therefore fail to require that, unlike a suspect who could afford one, a suspect who could *not* afford a lawyer would be provided one free of charge; it required, rather, that a suspect be advised merely that if he desired, but could not afford, to consult with and have a lawyer present during custodial interrogation, one would be appointed for that purpose. *See id.* at 472–73, 86 S.Ct. 1602. Ultimate financial liability for the cost of consultation with and presence of appointed counsel during custodial interrogation was never a consideration of consequence for the Court in *Miranda. See id.* As long as the suspect is made to understand that regardless of his present ability to retain counsel, he will be entitled to have an attorney ap-

pointed to intercede on his behalf with the police, and he voluntarily waives that right, his Fifth Amendment right to counsel has been adequately safeguarded. *Id.* at 479, 86 S.Ct. 1602.

¶ 17 Terms like "for free," "free of charge," or "at no cost" can clearly convey to a suspect that "if he cannot afford an attorney one will be appointed for him prior to any questioning." *See id.*; *see also Prysock*, 453 U.S. at 361, 101 S.Ct. 2806 ("It is clear that the police in this case fully conveyed to respondent his rights as required by *Miranda*. He was told of his right to have a lawyer present prior to and during interrogation, and his right to have a lawyer appointed *at no cost* if he could not afford one. These warnings conveyed to respondent his right to have a lawyer appointed if he could not afford one prior to and during interrogation.") (emphasis added). For that reason, if none other, these terms appear not infrequently in the published case law of state and lower federal courts. *E.g., United States v. Perez-Lopez*, 348 F.3d 839, 848 (9th Cir.2003). We are, however, unaware of any jurisdiction concluding that an advisement equivalent to the quoted language of *Miranda* itself is inadequate to apprise the suspect of his right to counsel, without some additional explanation that the suspect will ultimately be absolved of all liability for the cost of such an appointed attorney. This court has on several occasions similarly included terms like "without charge" or "free of charge," but only in loosely paraphrasing the advisement required by *Miranda*, rather than requiring an advisement beyond that specified in *Miranda, see, e.g., People v. Aguilar-Ramos*, 86 P.3d 397, 400 (Colo.2004), or in finding fault with a complete failure of the police to advise a suspect of his right to appointed counsel, *see, e.g., People v. Vigil*, 175 Colo. 373, 376, 489 P.2d 588, 589 (1971); *Perez v. People*, 176 Colo. 505, 507–08, 491 P.2d 969, 970 (1971). A number of other jurisdictions have gone further and expressly found a warning concerning financial liability to be unnecessary. *E.g., Chambers v. Lockhart*, 872 F.2d 274, 275 (8th Cir.1989), *cert. denied*, 493 U.S. 938, 110 S.Ct. 335, 107 L.Ed.2d 324 (1989); *Commonwealth v. Ponton*, 450 Pa. 40, 299 A.2d 634, 636 (1972) ("While it may be good prac-

tice to include [the phrase "free of charge"] in the warning, all that is constitutionally required is that an indigent accused be informed that if he has insufficient funds to retain a lawyer, a lawyer will be provided for him."); *State v. Hutton*, 57 Wash.App. 537, 789 P.2d 778, 781 (1990).

¶ 18 Although the question is not squarely before us in this appeal, it is, in any event, far from clear that a suspect who cannot afford to retain counsel prior to custodial interrogation is constitutionally entitled to the assistance of counsel without incurring any future financial obligation. In extending the privilege against self-incrimination to custodial interrogation in *Miranda*, as well as formulating a concomitant right of counsel to safeguard that privilege, the Supreme Court nowhere suggested that a suspect could not be held financially liable, at some point in the future, for such advice and assistance. *See* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. In the context of the Sixth Amendment right to counsel, the Court has upheld advising of state statutes requiring the repayment of attorney fees in the event a criminal defendant later becomes able to pay, *see Fuller v. Oregon*, 417 U.S. 40, 52–54, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974) (concluding that informing the defendant that he may be required to reimburse the State for the costs of his attorney did not "chill" his right to counsel under the Sixth Amendment); *cf.* § 21–1–106, C.R.S. (2013) (providing that a court may assess fees and costs against a defendant where it determines that the defendant is able to repay all or part of the expense of state-supplied or court-appointed counsel or any ancillary expenses incurred in representing such defendant), and other jurisdictions have actually concluded that a criminal defendant later found guilty may be required to reimburse the State for the costs of an attorney appointed to assist him during custodial interrogation, *see, e.g., State v. Cummings*, 346 N.C. 291, 488 S.E.2d 550, 565–66 (1997), *cert. denied*, 522 U.S. 1092, 118 S.Ct. 886, 139 L.Ed.2d 873 (1998) (holding that crossing out "at no cost" on a *Miranda* form and explaining that the defendant may have to pay if he is later found guilty was consistent with *Miranda*); *see*

*also Cummings v. Polk*, 475 F.3d 230, 239–41 (4th Cir.2007), *cert. denied*, 552 U.S. 961, 128 S.Ct. 400, 169 L.Ed.2d 281 (2007) (upholding sufficiency of such *Miranda* warnings on habeas review as not being an unreasonable application of Supreme Court case law).

¶ 19 In *People v. Al–Yousif*, 49 P.3d 1165, 1172 (Colo.2002), a case involving language comprehension, we addressed the understanding required of a defendant to knowingly and intelligently waive his *Miranda* rights. Along with an understanding that he need not speak with the police and an understanding that his statements can be used against him in court, we included only an understanding that he has the right to counsel prior to questioning. *Id.* Because we did not purport to address the warnings from which a full awareness of his right to counsel could be inferred, we did not repeat in *Al–Yousif Miranda's* admonition that a suspect must be expressly warned "that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." This warning is clearly required by *Miranda,* and we have never suggested otherwise. The advisement specified by *Miranda,* however, informs the suspect of precisely what he must understand concerning the waiver of his Fifth Amendment right to counsel, without any additional advisement that an attorney will be appointed free of charge.

### III.

¶ 20 Although questions arose concerning the translation of the officer's explanation of *Miranda* rights, it is clear that following an advisement of the right to consult with an attorney "before any questions were asked," the defendant inquired whether, or perhaps simply stated that, a lawyer was going to want money. In response, the officer expressly informed him that if he did not have the means for an attorney, one would be appointed for him. This statement was a fully effective equivalent, and in fact an extremely close paraphrase, of the warning specifically required by *Miranda* "fully to apprise" him of his right to counsel. It clearly conveyed to anyone capable of understanding these particular words, regardless of his familiarity with the American legal system, that if he desired an attorney, one would be appointed to assist him prior to any questioning, even if he could not afford one. *See Miranda*, 384 U.S. at 479, 86 S.Ct. 1602.

¶ 21 The defendant also contends that his right to counsel as guaranteed by *Miranda* was not knowingly and intelligently waived for the reason that he did not understand that he was entitled to an attorney free of charge. A knowing and intelligent waiver of the rights to silence and counsel, however, requires only that the defendant understand the warnings expressly mandated by *Miranda*. *See Spring*, 479 U.S. at 574, 107 S.Ct. 851; *Moran*, 475 U.S. at 421–22, 106 S.Ct. 1135. Whether or not the defendant might, under some set of circumstances, be entitled to the appointment of an attorney free of charge, in order for a waiver of the so-called Fifth Amendment right to counsel to be knowing and intelligent, *Miranda* requires only that a suspect be warned and understand that if he desires but cannot afford an attorney, one will be appointed for him prior to any questioning. *See Spring,* 479 U.S. at 574, 107 S.Ct. 851; *Moran,* 475 U.S. at 421–22, 106 S.Ct. 1135. No further knowledge concerning a suspect's ultimate financial obligation is relevant to the validity of a waiver.

¶ 22 The written advisement of *Miranda* rights, according to which the defendant was initially advised and as to which he signed a written waiver, clearly omitted part of the warning concerning the defendant's right to counsel that is specifically required by *Miranda* itself. While the signed waiver form evidenced a knowing and intelligent waiver of the defendant's right to silence, it was therefore inadequate to evidence a fully informed waiver of his Fifth Amendment right to counsel. Because, however, the defendant was given a fully effective equivalent of the advisement required by *Miranda* concerning his inability to afford counsel, prior to any interrogation, and after receiving that advisement he not only expressed his willingness to proceed but in fact volunteered without hesitation his account of the killing, his course of conduct evidenced a voluntary and

otherwise effective waiver of his right to counsel. *See Berghuis,* 560 U.S. at 384, 130 S.Ct. 2250.

## IV.

¶ 23 Because *Miranda v. Arizona* does not require that a suspect be advised of or understand that he will not ultimately bear any liability for the cost of an attorney appointed to assist him during custodial interrogation; and because the defendant was adequately advised and understood that if he requested the assistance of an attorney to consult with him and be present during custodial interrogation, but could not afford one, one would nevertheless be appointed for that purpose, the judgment of the court of appeals is affirmed.

JUSTICE HOOD concurs in the judgment, and JUSTICE HOBBS and JUSTICE MÁRQUEZ join in the concurrence in the judgment.

JUSTICE HOOD, concurring in the judgment.

¶ 24 I agree with the result in this case, but I cannot join the majority opinion. I respectfully disagree with the majority's decision to expound on issues that, by its admission, are "not squarely before us"—presumably because neither party asks us to decide them. Maj. op. ¶ 18.

¶ 25 Rather than simply decide whether Sanchez received an adequate *Miranda* advisement, the majority announces that *"Miranda v. Arizona* does not require that a suspect be advised of or understand that he will not ultimately bear any liability for the cost of an attorney appointed to assist him during custodial interrogation." *Id.* at ¶¶ 2, 23.

¶ 26 If that means that *Miranda* does not require an advisement conveying the right to court-appointed counsel—regardless of an ability to pay—it's wrong. "[I]t is necessary to warn [the defendant] not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him." *Miranda v. Arizona,* 384 U.S. 436, 473, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Without that additional warning,

the right to counsel becomes "hollow" because it "would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one." *Id.*

¶ 27 But if the majority's statement simply means that *Miranda* does not require—in every case—an advisement that includes the terms "for free," "free of charge," or "at no cost," I agree. As the majority notes, *Miranda* requires "no talismanic incantation." *California v. Prysock,* 453 U.S. 355, 359, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981). It simply requires an "effective and express explanation" of a suspect's rights, including an indigent's right to an attorney "if he cannot afford" one. *Miranda,* 384 U.S. at 473, 479, 86 S.Ct. 1602. "The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda.*'" *Duckworth v. Eagan,* 492 U.S. 195, 203, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989) (alteration in original) (quoting *Prysock,* 453 U.S. at 359, 101 S.Ct. 2806).

¶ 28 So, to comply, law enforcement may quote *Miranda* verbatim, or may explain the right to have a lawyer appointed "at no cost," *Prysock,* 453 U.S. at 361, 101 S.Ct. 2806, or may tell a suspect that an attorney will be appointed "free of charge," *People v. Aguilar–Ramos,* 86 P.3d 397, 400 (Colo. 2004). What matters is that the *Miranda* advisement or its "fully effective equivalent" adequately conveys the right to have court-appointed counsel present during custodial interrogation. *Miranda,* 384 U.S. at 476, 86 S.Ct. 1602.

¶ 29 The majority acknowledges these cases and even quotes relevant parts of them. But instead of analyzing this case under those principles, the majority chooses to discuss whether Sanchez is "constitutionally entitled to the assistance of counsel without incurring any future financial obligation." Maj. op. ¶ 18. He doesn't argue that he is. He simply argues that the *Miranda* advisement was inadequate because it did not convey his right to court-appointed counsel. And I agree with the majority that his argument fails for a simple reason: Sanchez received the fully effective equivalent of a *Mi-*

*randa* advisement. He was told that an attorney would be "appointed" for him if he did not have the "means."

¶ 30 The majority's decision to conflate a right "clearly required by *Miranda*" (advising a suspect of his right to court-appointed counsel if he is indigent), with a right whose existence it claims is "far from clear" (an "additional advisement that an attorney will be appointed free of charge" without the possibility of any subsequent request for reimbursement), serves only to unnecessarily complicate what would otherwise be a relatively straightforward analysis. *See id.* at ¶¶ 18–19.

¶ 31 For these reasons, I do not join what I consider to be the majority's dicta regarding whether a suspect might bear any liability for the cost of an attorney appointed to assist him during custodial interrogation. Therefore, I concur only in the judgment of the court.

I am authorized to state that JUSTICE HOBBS and JUSTICE MÁRQUEZ join in the concurrence in the judgment.