2015 CO 13

**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellant**

v.

**Luis Fernando CARRION,**
**Defendant–Appellee**

**Supreme Court Case No. 14SA262**

Supreme Court of Colorado.

March 16, 2015

Peter A. Weir, District Attorney, Donna Skinner Reed, Chief Appellate Deputy District Attorney, Golden, Colorado, for Plaintiff–Appellant.

Douglas K. Wilson, Public Defender, Miriam Stohs, Deputy Public Defender, Golden, Colorado, for Defendant–Appellee.

JUSTICE HOBBS delivered the Opinion of the Court.

¶1 This interlocutory appeal challenges the trial court's order suppressing statements made by Luis Carrion, the defendant, during custodial interrogation. Interrogating officers gave Carrion an oral *Miranda* advisement and provided him an English language written advisement on a waiver form, which he signed. After finding the oral *Miranda* advisement deficient and that the prosecution presented insufficient evidence Carrion was able to read English, the trial court suppressed statements he made during the interrogation. The prosecution argues that the suppression order is erroneous because the trial court's factual findings are not supported by the record. We hold that the trial court's factual findings are supported by the record and are not clearly erroneous. We therefore affirm the trial court's order.

**I.**

¶2 On October 25, 2013, the police arrested Carrion pursuant to an arrest warrant for one count of sex assault on a child—pattern of abuse. That night, Lee Hoag and Matt Clark, investigators with the Jefferson County Sheriff's Office, interrogated Carrion at the Denver Police Department. The interview was audio recorded and conducted entirely in English. Investigator Hoag advised Carrion that he did not have to talk to them, he did not have to answer their questions, he could stop the interview at any time, and he had a right to have a lawyer present during questioning. However, neither investigator orally advised Carrion that if he could not afford an attorney one would be appointed to represent him nor that anything he said could be used against him in court.

¶3 Carrion was born in Puerto Rico, his native language is Spanish, and he speaks English with an accent. Near the beginning of the interrogation, Investigator Hoag asked Carrion if he could read and write, to which Carrion responded, "I read, um, well, so-so writing" and he could "write my name, address, and a little bit in the computer." After the oral advisement, Investigator Hoag gave Carrion a waiver of rights form written in English and asked him, "Can you read this or do you want me to read this for you?" to which Carrion responded, "Okay." Neither of the investigators read the written *Miranda* advisement aloud to Carrion, nor did they ask him if he understood the rights listed on the waiver form.

¶4 After briefly looking at the waiver form, Carrion signed it and proceeded to make incriminating statements. On July 15, 2014, Carrion filed a motion to suppress his statements, alleging that he did not voluntarily, knowingly, and intelligently waive his *Miranda* rights. During the hearing on that motion, the trial court observed, and the prosecution did not dispute, that the oral *Miranda* advisement was legally deficient because the investigators never told Carrion that if he could not afford a lawyer one would be appointed for him.[1] However, the prosecution alleged that the English language waiver form Carrion signed adequately advised him of his *Miranda* rights.[2] In support of its argument that Carrion could read

---

1. Our independent review of the audio recording reveals that the oral *Miranda* advisement was deficient in one additional way: Investigators never told Carrion that anything he said could be used against him in court.

2. The waiver form included a legally sufficient recitation of Carrion's *Miranda* rights.

this form, the prosecution relied on (1) a letter written in English by Carrion's wife to Carrion while he was in jail, (2) testimony from Carrion's sister-in-law, Lily Blohm, that she spoke to Carrion only in English, and that he spoke English with other family members during the past twenty-five years she had known him, (3) Carrion's answer during interrogation to the question of whether he could read and write, and (4) Investigator Hoag's testimony that Carrion read the form.

¶ 5 The trial court found that there were "obvious language problems" and that "Carrion had difficulty with the English language." While the court acknowledged that Carrion said he did not have trouble understanding spoken English, the court found there was insufficient evidence to show that Carrion, a native Spanish speaker, could read or write in English. Because the prosecution "did not really establish anything to show that Carrion understood his right to have an attorney appointed to him in writing," the trial court granted Carrion's motion to suppress.

## II.

¶ 6 The prosecution argues that the suppression order is erroneous because the trial court's factual findings are not supported by the record. We hold that the trial court's factual findings are supported by the record and are not clearly erroneous. We therefore affirm the trial court's order.

### A. Standard of Review

¶ 7 At the outset of custodial interrogation, the police must deliver a *Miranda* advisement to inform a suspect of his constitutional rights. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *People v. Platt*, 81 P.3d 1060, 1065 (Colo.2004). A *Miranda* advisement is adequate as long as it conveys to the suspect a clear and understandable warning that he has a right to remain silent, anything he says can be used against him in court, he has a right to the presence of an attorney, and, if he cannot afford an attorney one will be appointed for him prior to any questioning if

he so desires. *People v. Hopkins*, 774 P.2d 849, 853 (Colo.1989).

¶ 8 When reviewing a suppression order, we defer to a trial court's findings of fact that are supported by competent evidence in the record. *People v. Pitts*, 13 P.3d 1218, 1221 (Colo.2000). We will not substitute our own judgment for that of the trial court unless the trial court's findings are clearly erroneous or not supported by the record. *Id.*

### B. Application to This Case

¶ 9 The prosecution does not dispute that the oral *Miranda* advisement was deficient. However, it contends that the investigators adequately advised Carrion of his *Miranda* rights through the written waiver form he signed. It argues the trial court erred in finding Carrion could not read English. The prosecution misreads the trial court's order. The trial court did not find that Carrion could not read English. Instead, based on the facts and circumstances, it found that there was "insufficient evidence before the court to show that Mr. Carrion could write in the English language or read the English language," in light of his "obvious language problems" and "difficulty with the English language." Viewing the record as a whole, we cannot say that the trial court clearly erred in its findings. *See People v. Humphrey*, 132 P.3d 352, 362 (Colo.2006) ("[W]e do not opine as to whether our independent review of the facts would yield the same result. Instead, we defer to the trial court's resolution of disputed facts, as it is consistent with and supported by evidentiary findings.").

¶ 10 To support its position that Carrion could read English, the prosecution presented evidence that (1) Carrion married into a family that spoke only English, (2) Carrion's wife wrote a letter to him while he was in jail that was in English, (3) Carrion affirmatively responded to the police officer's question of whether he could read as she offered him paperwork written in English, and (4) the officer testified that Carrion read the advisement before signing it.

¶ 11 Although the audio recording indicates that Carrion could speak and understand English, and Carrion's sister-in-law, Blohm, testified that he spoke English with his family, no one testified that he could read English. Simply because Carrion could understand and speak English does not mean he could read English. *See People v. Lee*, 93 P.3d 544, 549 (Colo.App.2003) (discussing a juror who could understand and speak English but could not read or write English). Blohm also testified that she and Carrion had worked together at a nursing home. She worked as a janitor and sometimes was given a list of tasks written in English. However, Carrion worked as a dishwasher, and Blohm did not indicate that he needed to read English to carry out his job responsibilities. The fact that Carrion's wife sent him a letter in English while he was in jail does not establish that he could read English, especially because the prosecution did not allege or introduce any evidence that Carrion read this letter or responded to it.

¶ 12 The prosecution also relies on Investigator Hoag's testimony that she offered to read the waiver form to Carrion but he declined her offer. This testimony is not supported by the record. When the investigator handed Carrion the form, she asked, "Can you read this or do you want me to read this for you?" to which Carrion responded, "Okay." As the trial court observed, this is an either–or question. Carrion's answer to this compound inquiry was unresponsive; "okay" alone does not indicate a selection of either option. Carrion's answer does not support the prosecution's assertion that he could read English.

¶ 13 At one point during the interrogation, Investigator Hoag asked Carrion if he could read and write, to which Carrion responded, "I read, um, well, so-so writing" and that he could "write my name, address, and a little bit in the computer." As the trial court observed, this is the only testimony presented by the prosecution that Carrion could read or write in English. However, Carrion's response indicates that he had trouble writing. Further, the question did not specify whether the investigator was referring to reading and writing in English or Carrion's native language of Spanish; therefore, Carrion's answer was ambiguous. The trial court's findings are supported by the record and are not clearly erroneous.

### III.

¶ 14 Accordingly, we uphold the trial court's suppression order and return this case for further proceedings consistent with this opinion.