Opinion by JUDGE FOX J.
¶ 1 In Part II, JUDGE FOX, joined by Judge Ney, concludes that the defendant's Miranda rights were violated during his custodial interrogation and the statements he made during the interrogation were erroneously admitted at trial.
¶ 2 In Part III, JUDGE FOX, joined in part by Judge Ney as to the unlawful distribution of a controlled substance only, concludes that the error, however, does not warrant *17 reversal because it was harmless beyond a reasonable doubt.
¶ 3 In Part IV, JUDGE FOX, joined by Judge J. Jones, addresses and rejects the defendant's contention that the district court erred by allowing the jury unfettered access to defendant's videotaped interrogation.
¶ 4 JUDGE J. JONES specially concurs in the judgment. Judge J. Jones disagrees with the majority's reasoning in Parts II and III because he is of the view that the defendant's Miranda contention is unpreserved and should not, therefore, be addressed.
¶ 5 JUDGE NEY concurs in part and dissents in part. Judge Ney concurs with the majority's reasoning and conclusion in Part II. Judge Ney also concurs with Part III's conclusion that the error was harmless beyond a reasonable doubt as to the defendant's conviction for unlawful distribution of a controlled substance. However, Judge Ney dissents from Part III's conclusion that the error was harmless as to defendant's convictions for conspiracy to commit first degree murder and intimidating a witness. Judge Ney would therefore reverse those convictions. Judge Ney would not address the issue in Part IV.
Opinion by JUDGE FOX.
¶ 6 Defendant, Parrish Ramon Carter, appeals his judgment of conviction, entered on jury verdicts, for conspiracy to commit first degree murder, intimidating a witness, and unlawful distribution of a controlled substance. One of Carter's contentions presents an issue of first impression in Colorado: whether a warning to a custodial suspect that he has "the right to have an attorney," without more, adequately informs him of his right, under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), to have an attorney present before and during his interrogation. We conclude that this abbreviated statement does not meet the criteria established by Miranda . Nonetheless, as explained below, we affirm the judgment.
I. Background
¶ 7 In the summer of 2004, Robert Ray and Sir Mario Owens attended an annual barbecue and rap festival. A fight broke out in the parking lot, and, during the conflict, Owens shot and killed an individual who attempted to break up the fight. In addition, Ray shot and injured Javad Marshall-Fields and another person. After the shooting, Ray and Owens fled in Ray's car.
¶ 8 Ray and Owens were charged in connection with the homicide. Marshall-Fields was the only cooperating witness to identify Ray as a shooter and was scheduled to testify against him.
¶ 9 About one year after the shooting, Ray, Owens, and Carter recognized Marshall-Fields's truck parked outside of a sports bar. Owens instructed Carter to approach Marshall-Fields inside and discourage him from testifying-either by offering him money or threatening him. Carter entered the sports bar and spoke to Marshall-Fields.
¶ 10 The following night, Marshall-Fields and his fiancée were shot and killed in their car by the occupants of a passing vehicle.
¶ 11 After the shooting, Marshall-Fields's friends told the police about the incident at the sports bar. The police received surveillance camera footage from the bar, identified Carter as the man who spoke to Marshall-Fields, and obtained a warrant for his arrest. After Carter's arrest, he was interrogated, outside the presence of an attorney, and a video recording of that interrogation was introduced at trial.
¶ 12 Carter was charged by indictment with first degree murder of Marshall-Fields and his fiancée, bribing a witness, conspiracy to commit first degree murder, intimidation of a witness, and unlawful distribution of a controlled substance.
¶ 13 A jury acquitted Carter of first degree murder and bribing a witness but convicted him of the remaining charges. The court sentenced Carter to Department of Corrections custody for a term of forty-eight years for conspiracy to commit first degree murder, twelve years for intimidating a witness, and ten years for distribution of a controlled substance, all to be served consecutively.
II. The Miranda Advisement
¶ 14 Carter contends that the district court erred in admitting, over his objection, evidence *18 of his videotaped interrogation because the police failed to adequately advise Carter of his Miranda right to have a lawyer present. We agree and conclude that a warning, which provides that a custodial suspect has "the right to have an attorney" without more, does not adequately inform a suspect of his right to the presence of an attorney before and during the interrogation. However, we also conclude that the court's error does not warrant reversal because the admission of the evidence was harmless beyond a reasonable doubt as to the unlawful distribution charge.[1]
A. Additional Background
¶ 15 After Carter was arrested, a police officer and the lead Aurora detective in the murder investigation interrogated him.
¶ 16 Before the detective began asking Carter questions, she advised him as follows
Since you're in custody, before I can even talk to you I have to do the formal little rights things, okay? So you have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to have an attorney. If you cannot afford to hire a[n] attorney, one will be appointed to you without cost. Do you understand those?
The advisement took approximately ten to fifteen seconds. Carter nodded and made a sound indicating that he understood.
¶ 17 At the time of Carter's interrogation, the police department had a standard Miranda advisement form that officers could use at their discretion and have the suspect sign. One portion of this written form stated, "You have the right to talk to a lawyer and have him present with you while you are being questioned."
¶ 18 The detective who interrogated Carter previously used the form to inform suspects of their Miranda rights. However, about a year before Carter's interrogation, she attended a police seminar on the principles of interviews and interrogation. At that conference, a speaker presented PowerPoint slides instructing officers to " '[m]inimize' the impact of Miranda on the interview" by introducing the Miranda warning with statements such as "You've seen T.V., they make me do this ..." and "I think other people may be lying but before I can ask you if they are...." After the conference, the detective stopped using the standard written form.
¶ 19 During Carter's interrogation, the police officer and the detective asked him questions about his family, his acquaintances, and threatening Marshall-Fields inside the sports bar. When the officers showed Carter a surveillance photo of a man at the bar with Marshall-Fields, he identified himself as that man. Carter also admitted that he was in the sports bar for ten to fifteen minutes and talked to Marshall-Fields, but he denied that he threatened anyone. Carter gave inconsistent and incomplete answers during his interrogation.
¶ 20 The interview lasted for approximately two hours, until Carter stated, "I just got to get me a lawyer." The entire interview was video recorded.
¶ 21 Before his trial, Carter filed a motion to suppress evidence of the videotaped interrogation. Following multiple hearings on the issue, the district court denied Carter's motion and admitted the recording, concluding that the detective advised Carter of "the four Miranda rights, which are required to be given." The court added
[A] police officer can minimize the Miranda advisement and not violate the constitutional requirement.
[The detective] ... said, "Before I can talk to you," and then gave him the four rights, I do find that she did minimize. I do find that the [advisement provided] to [Carter] were perfunctory in that they were the four rights. They were adequate but they were perfunctory.
B. Standard of Review and Preservation
¶ 22 Review of a court's denial of a motion to suppress evidence based on an inadequate Miranda advisement presents mixed questions of fact and law.
*19 People v. Aguilar-Ramos, 86 P.3d 397, 400-01 (Colo.2004). We defer to the district court's findings of fact "unless they are clearly erroneous or unsupported by the record." People v. Ferguson, 227 P.3d 510, 512 (Colo.2010). But, we review the adequacy of the Miranda advisement de novo. See Aguilar-Ramos, 86 P.3d at 402 ; see also United States v. Hernandez, 93 F.3d 1493, 1501 (10th Cir.1996) ("Whether the language of a particular Miranda warning was adequate is reviewed de novo.").
¶ 23 Carter preserved this issue for appeal by filing a motion to suppress and further arguing in support of his motion at the motion's hearing. See People v. Jansen, 713 P.2d 907, 912 n.8 (Colo.1986) (A defendant's motion to suppress "should state with reasonable specificity the legal grounds upon which the motion[ ][is] based" in order to "put the prosecution on notice of the contentions it must be prepared to meet at a suppression hearing and to inform the court of the issues to be decided."). Carter's motion argued that he received an insufficient Miranda advisement while he "was in custody and was restrained during the interview. The Miranda advisement was completely inadequate. It was less than perfunctory. There was no written advisement."
¶ 24 At the motion's hearing, Carter's counsel further specified the inadequate nature of the advisement when he questioned the detective who interrogated Carter. Counsel asked the detective about (1) her decision not to use the portion of the standard advisement form that referenced Carter's right to have an attorney "present with [him] while [he's] being questioned" and (2) her failure to advise Carter, before interrogating him, that he could "decide at any time to exercise [his Miranda ] rights." See CRE 103(a)(1) (A timely objection or motion must state the specific ground of the objection if "the specific ground was not apparent from context.").
C. Governing Legal Principles
¶ 25 The Fifth Amendment to the United States Constitution provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself."
¶ 26 Almost fifty years ago, the United States Supreme Court held that a suspect in custody must be advised of his rights under the Fifth and Fourteenth Amendments before being interrogated. Miranda, 384 U.S. at 436, 86 S.Ct. 1602. These rights must be communicated to the suspect to permit him "a full opportunity to exercise the privilege against self-incrimination." Id. at 467, 86 S.Ct. 1602.
¶ 27 If a suspect in custody does not receive an adequate Miranda warning, any statement made during the interrogation may not be used by the prosecution at trial. Sanchez v. People, 2014 CO 56, ¶ 11, 329 P.3d 253 (highlighting "the inherently coercive nature of custodial police interrogation [that] heightens the risk that an individual will not be accorded his privilege under the Fifth Amendment"). This exclusionary rule exists because admission at trial of a defendant's unwarned "custodial statements as substantive proof of guilt is tantamount to compelling the defendant to testify against himself." People v. Trujillo, 49 P.3d 316, 322 (Colo.2002).
¶ 28 To be adequate, the advisement must inform the suspect that he "[1] has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." Miranda, 384 U.S. at 479, 86 S.Ct. 1602.
¶ 29 The third warning, the absence of which is the primary issue in this case, requires that a suspect "be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation." Id. at 471, 86 S.Ct. 1602. This warning "is an absolute prerequisite to interrogation," and must instruct the suspect that the right to the presence of an attorney begins before, and continues throughout, the interrogation. Id.
¶ 30 The Miranda warning need not "be given in the exact form described in [the Miranda ] decision," and we need not examine the words employed "as if construing a *20 will or defining the terms of an easement." Duckworth v. Eagan, 492 U.S. 195, 202-03, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989). Instead, we must assess whether the warning "reasonably 'conve[yed] to [a suspect] his rights as required by Miranda .' " Florida v. Powell, 559 U.S. 50, 60, 130 S.Ct. 1195, 175 L.Ed.2d 1009 (2010) (quoting Duckworth, 492 U.S. at 203, 109 S.Ct. 2875 ).
¶ 31 The United States Supreme Court has regularly reinforced the principle that a suspect must be informed that he has the right to the presence of an attorney during interrogation. See, e.g., California v. Prysock, 453 U.S. 355, 361, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981) ("It is clear that the police in this case fully conveyed to respondent his rights as required by Miranda . He was told of his right to have a lawyer present prior to and during interrogation...."); Fare v. Michael C., 442 U.S. 707, 717, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979) ("The rule the Court established in Miranda is clear. In order to be able to use statements obtained during custodial interrogation of the accused, the State must warn the accused prior to such questioning of his right to remain silent and of his right to have counsel, retained or appointed, present during interrogation.").
¶ 32 In its most recent decision addressing the adequacy of a Miranda warning, the Supreme Court reiterated that such warnings must inform the suspect that the right to an attorney attaches before and during an interrogation. See Powell , 559 U.S. at 60, 130 S.Ct. 1195. The Supreme Court held that the warning to a suspect that he had " 'the right to talk to a lawyer before answering any of our questions' " and " 'the right to use any of [his] rights at any time [he] want[ed] during th[e] interview' " sufficiently communicated the Miranda rights to the suspect because, "[i]n combination, the two warnings reasonably conveyed the right to have an attorney present, not only at the outset of interrogation, but at all times." Id. at 62, 130 S.Ct. 1195.
¶ 33 Consistent with these cases, the Colorado Supreme Court has likewise required that a suspect in custody be informed of his right to have an attorney present before questioning begins. See People v. Carrion, 2015 CO 13, ¶ 7, 343 P.3d 972 ("A Miranda advisement is adequate as long as it conveys to the suspect a clear and understandable warning that he has a right to remain silent, anything he says can be used against him in court, he has a right to the presence of an attorney, and, if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.") (emphasis added); Sanchez, ¶ 19 ("[T]hat a suspect must be expressly warned 'that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires' ... is clearly required by Miranda and we have never suggested otherwise."); see also People v. Howard, 92 P.3d 445, 449 (Colo.2004) ; People v. Hopkins, 774 P.2d 849, 853 (Colo.1989).
¶ 34 No appellate decision in this jurisdiction has ever addressed the specific question of whether the statement that a custodial suspect has "the right to have an attorney," without more, adequately informs the suspect of his right to have an attorney present before and during an interrogation. Other jurisdictions have arrived at differing conclusions regarding this question.
¶ 35 Federal circuits disagree about how detailed this particular Miranda warning must be to adequately protect a suspect's rights. Compare United States v. Dire, 680 F.3d 446, 473-74 (4th Cir.2012) (The defendants were adequately advised "that if they wanted a lawyer, we would give them one." (internal quotation marks omitted)), and United States v. Caldwell, 954 F.2d 496, 501-04 (8th Cir.1992) (The defendant was adequately advised that he "ha[d] a right for an attorney." (internal quotation marks omitted)), with United States v. Warren, 642 F.3d 182, 184, 187 (3rd Cir.2011) (The defendant was adequately advised he had "the right to an attorney. If you cannot afford to hire an attorney, one will be appointed to represent you without charge before any questioning if you wish .") (emphasis added), and United States v. Tillman, 963 F.2d 137, 140-41 (6th Cir.1992) (The defendant was inadequately advised that he had "the right to the presence of an attorney" because it "failed to convey to defendant that he had the right to an attorney ... before, during and after *21 questioning."). See also Martin J. McMahon, Annotation, Necessity that Miranda Warnings Include Express Reference to Right to Have an Attorney Present During Interrogation, 77 A.L.R. Fed. 123 (1986) (collecting federal cases and noting split regarding whether Miranda warning must include an express reference to the right to have an attorney present during interrogation).
¶ 36 While recognizing that there is "no talismanic incantation" under Miranda, Prysock, 453 U.S. at 359, 101 S.Ct. 2806, we nonetheless conclude that the statement that a suspect has "the right to have an attorney," without more, does not reasonably convey to a suspect his or her Miranda right to have an attorney present before and during an interrogation, Powell, 559 U.S. at 60, 130 S.Ct. 1195.
D. Analysis
¶ 37 In accordance with these principles, we conclude that Carter's Miranda rights were violated. See id. We reach this conclusion because Miranda clearly requires that a suspect be informed of the right to have a lawyer present during interrogation and, for three reasons, the warning here did not inform Carter of that right. See Miranda, 384 U.S. at 471, 86 S.Ct. 1602 ; Sanchez, ¶ 19.
¶ 38 First, the statement did not reasonably convey to Carter that he had the right to an attorney during his interrogation because it contained "no temporal element and could be construed as meaning sometime after questioning or during trial." Adam S. Bazelon, Comment, Adding (or Reaffirming) a Temporal Element to the Miranda Warning "You Have the Right to an Attorney, " 90 Marq. L.Rev. 1009, 1032 (2007).
¶ 39 Second, the detective did not combine her warning with any other statement that would have indicated that the right to an attorney began before, and continued throughout, Carter's interrogation.
¶ 40 Third, Carter could not have reasonably inferred that his right to an attorney attached before and during interrogation. To the contrary, the detective's advisement, when read in context, could just as well have misled Carter to believe that he was entitled to counsel only at some future court proceeding. The detective's warning of the right to an attorney was immediately preceded by the advisement that anything Carter said "can and will be used against [him] in a court of law" and immediately succeeded by the advisement that if he could not afford an attorney, one "will be appointed to you without cost." The preceding statement related to a later court proceeding and the succeeding statement implied the future appointment of an attorney. See, e.g., Atwell v. United States, 398 F.2d 507, 510 (5th Cir.1968) (A police officer's warning that the defendant "could consult with counsel at anytime" was inadequate because "anytime" "could be interpreted by an accused, in an atmosphere of pressure from the glare of the law enforcer and his authority, to refer to an impending trial or some time or event other than the moment the advice was given."); Daniel J. Croxall, Comment, Inferring Uniformity: Towards Deduction and Certainty in the Miranda Context, 39 McGeorge L.Rev. 1025, 1029-34 (2008) (noting problems with relying on suspect to correctly infer his or her Miranda rights absent a clear warning); see also McMahon, 77 A.L.R. Fed. 123 (collecting federal cases holding that further warnings referring expressly to the right to attorney during interrogation were necessary).
¶ 41 The need for a clear Miranda warning is particularly important where law enforcement officers intentionally downplay the significance of the Miranda rights by de-emphasizing their importance. This is so because Miranda "established a number of prophylactic rights designed to counteract the 'inherently compelling pressures' of custodial interrogation," McNeil v. Wisconsin, 501 U.S. 171, 176, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), including the use of deception to obtain a confession, Miranda, 384 U.S. at 453-55, 86 S.Ct. 1602. The practice of minimizing Miranda was evident here where the detective prefaced her warning by saying that she had to go over "formal little rights things" before she could talk to Carter-a routine she developed after attending a seminar on how to minimize the impact of Miranda . See *22 Missouri v. Seibert, 542 U.S. 600, 608-09, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004) (condemning a police department strategy of withholding Miranda until mid-interrogation in order to draw out a confession and downplay the importance of the Miranda advisement).
¶ 42 The People argue that Carter's previous experience with law enforcement and his invocation of his right to counsel after two hours of questioning established that he understood his right to have an attorney with him during the interrogation. We disagree.
¶ 43 Miranda, 384 U.S. at 468, 86 S.Ct. 1602, explained that its advisement was not only for "the subnormal or woefully ignorant" but was intended to "overcom[e] the inherent pressures of the interrogation atmosphere." Thus, "[n]o amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in [the] stead" of an adequate warning. Id. at 472, 86 S.Ct. 1602 ; see State v. Carlson, 228 Ariz. 343, 266 P.3d 369, 374 (Ariz.Ct.App.2011) (rejecting argument that the defendant's past dealings with law enforcement officials and training as a paralegal should be considered when determining if he knew his rights); see also Missouri, 542 U.S. at 608-09, 124 S.Ct. 2601 (mid-interrogation Miranda advisement does not cure an earlier, insufficient advisement).
¶ 44 We also disagree with the People's contention that Carter voluntarily, knowingly, and intelligently waived his Miranda rights. "No effective waiver of the right to counsel during interrogation can be recognized unless specifically made after the [ Miranda warnings] have been given." Miranda, 384 U.S. at 470, 86 S.Ct. 1602. Carter did not receive an adequate Miranda warning. Therefore, he could not have waived those rights.
¶ 45 Because Carter did not receive an adequate Miranda advisement, the statements he made during the course of his custodial interrogation should not have been admitted at trial. See id . at 444, 86 S.Ct. 1602 ; Sanchez, ¶ 11.
III. Harmless Error
¶ 46 Even though we conclude that the district court erroneously admitted Carter's statements, we[2] also conclude that the error does not warrant reversal because it was harmless beyond a reasonable doubt. See Hagos v. People, 2012 CO 63, ¶ 11, 288 P.3d 116.
¶ 47 We review perceived errors of constitutional dimension that were preserved by objection for constitutional harmless error. Id ."These errors require reversal unless the reviewing court is 'able to declare a belief that [the error] was harmless beyond a reasonable doubt.' " Id. (quoting Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ). Under this standard, we reverse if there is a reasonable possibility that the error might have contributed to the conviction. Id.
¶ 48 Because Carter never confessed-and did not otherwise incriminate himself-during the interview, Judge Fox concludes that the admission of his videotaped interview was ultimately harmless beyond a reasonable doubt and did not affect the outcome of the trial. See Crim. P. 52(a) ; People v. Frye, 2014 COA 141, ¶ 2, --- P.3d ---- (recognizing that where the prosecution admits, over defendant's objection, a statement obtained in violation of Miranda, reversal is required unless the error was harmless beyond a reasonable doubt); Raile v. People, 148 P.3d 126, 134 (Colo.2006) (concluding that although the admission of the challenged statements violated the defendant's confrontation rights, the admission was harmless beyond a reasonable doubt).
¶ 49 Various factors guide this analysis, including " 'the importance of the witness' testimony to the prosecution's case, whether the testimony was cumulative, the presence or absence of corroborating or contradictory evidence on the material points of the witness' testimony, the extent of the cross-examination otherwise permitted, and the overall strength of the prosecution's case.' " Raile, 148 P.3d at 134 (quoting *23 Blecha v. People, 962 P.2d 931, 942 (Colo.1998) ); accord Frye, ¶ 12.
¶ 50 The jury acquitted Carter of first degree murder, but convicted him of conspiracy to commit first degree murder, intimidating a witness, and unlawful distribution of a controlled substance. The prosecution's overarching theory of the case was that Carter offered or agreed to assist Ray in intimidating, and if necessary, silencing Marshall-Fields, an eyewitness to a 2004 homicide attributed to Ray. The videotaped interview does nothing to confirm that theory. Accordingly, the videotape did nothing to prove the prosecution's theory of guilt.
¶ 51 In contrast, the People presented ample other evidence tying Carter to the charged crimes. For example, the surveillance camera from the sports bar that Marshall-Fields patronized the evening before he was shot and killed documented Carter speaking with him. Marshall-Fields's friends also witnessed the exchange and reported it to law enforcement authorities. The prosecution offered ample evidence-including Carter's later statements to cellmates-proving Carter's involvement in the conspiracy and the actions he took to intimidate Marshall-Fields. Thus, the police interrogation was unnecessary to the prosecution's case and duplicated other evidence presented during trial.
¶ 52 Given the record here, Judge Fox concludes that any error in the Miranda advisement that preceded Carter's police interview cannot serve as a basis to reverse Carter's conviction. See Raile, 148 P.3d at 134 ; Frye, ¶ 12.
IV. Jury's Access to the Videotaped Interrogation
¶ 53 Carter also contends that the district court erred in allowing the jury to have unfettered access to the video recording of his interrogation. We are not persuaded.
¶ 54 Carter's counsel argued, outside the presence of the jury, that the jury should have only supervised access to the video of Carter's interrogation and objected to giving the jury unfettered access to the transcription of the videotape. The prosecution, in turn, responded that the videotaped interrogation contained Carter's own statements and those statements were non-testimonial. Accordingly, the prosecution argued that DeBella v. People, 233 P.3d 664, 666-67 (Colo.2010) -decided just days before the district court was required to address the issue-did not require the court to limit the jury's access to the video recording.
¶ 55 After hearing extensive argument by both sides and reviewing then-available case law, the district court allowed the jury to access the video recording (and the equipment to play that recording). The court did not, however, initially allow the jury to also have the transcript of the recording. Rather, it indicated it would rule on the transcript issue if the jury requested access after viewing the video recording.
¶ 56 Consistent with the rationale in People v. Gingles, 2014 COA 163, 350 P.3d 968, we conclude the district court did not abuse its discretion in allowing the requested access. Although the district court did not have the benefit of Gingles, it considered that the person in the video recording was Carter himself. In Gingles, a division of this court concluded that the "historical reason for treating a defendant's confession" differently from a third-party witness's statement is that a defendant's confession's "centrality in the case warrants whatever emphasis may result." Id. at ¶ 17. Because this historical reason retains vitality, the division held that a district court may allow "unrestricted jury access during deliberations to a defendant's voluntary and otherwise admissible confession." Id . at ¶ 18.
¶ 57 Counsel's contention, during oral argument, that the videotaped interview was not a "confession" since Carter never admitted to the crimes at issue does not persuade us to disavow Gingles here. Whether the recorded statements inculpate or exculpate a defendant, the fairness-because they are Carter's own words and because they can help the jury assess Carter's credibility (or lack thereof)-in allowing their use is the same.
¶ 58 Absent the Miranda violation, the videotape would have been admissible. See, e.g., *24 People v. Meier, 954 P.2d 1068, 1070 (Colo.1998) (holding that out-of-court statements made by the defendant were admissible as admissions by a party-opponent under CRE 802(d)(2)); People v. Stephenson, 56 P.3d 1112 (Colo.App.2001), (determining that a police videotape of defendant's statement was admissible even though parts were inaudible). For all the reasons we conclude that the deficient Miranda advisement did not affect the outcome at trial, we conclude that any error here is harmless as well.
V. Conclusion
¶ 59 The judgment is affirmed.
JUDGE J. JONES specially concurs in the judgment.
JUDGE NEY* concurs in part and dissents in part.
J. JONES, J., specially concurring in the judgment.
¶ 60 I agree with Judge Fox's analysis rejecting defendant's contention that the district court erred by allowing the jury unfettered access to defendant's videotaped interview with the police. And though I agree with Judge Fox that the judgment of conviction should be affirmed, I write separately because I would reject defendant's contention that the district court erred in denying his motion to suppress. I respectfully disagree with Judges Fox and Ney that defendant preserved his argument that the detective's Miranda advisement was inadequate because the detective failed to advise him that he could speak with an attorney before the interview and have an attorney with him during the interview. Defendant never raised that issue in the district court and the district court never ruled on it.
¶ 61 With respect to the adequacy of the advisement, defendant's written motion to suppress said, in full: "The Miranda advisement was completely inadequate. It was less than perfunctory. There was no written advisement." In its written response to defendant's motion, the prosecution pointed out that the detective had given defendant all four warnings required by Miranda, including "that he has the right to the presence of an attorney." Defendant never challenged that assertion.
¶ 62 At the hearing on defendant's motion, defendant's attorney argued that the advisement was inadequate because "it was less than perfunctory." She argued that the detective "did not give [defendant] a written advisement of rights," the advisement "took a total of 15 seconds," "it took [the detective] 10 seconds to click off on her fingers the formal little rights thing," and the detective had "belittl[ed] the constitution" by saying the advisement was "just a formality." She did not argue, expressly or by clear implication, that the substance of any of the four warnings required by Miranda was incorrect or incomplete.
¶ 63 The district court's ruling on the motion dealt almost entirely with defendant's contention that he had not validly waived his rights, the issue which had consumed the vast majority of the hearing. In the course of its ruling, the district court said the detective had given defendant "the four Miranda rights, which are required to be given.... I do find that the rights as given to [defendant] were perfunctory in that they were the four rights. They were adequate but they were perfunctory."
¶ 64 Considered in context, the district court's ruling that the advisement was adequate can reasonably be understood only as a rejection of the arguments that defendant's counsel actually made, which were both specific and limited, and which did not include any assertion that the detective was required to advise defendant that he had the right to an attorney before and during the interview. As a rule, courts decide issues raised by the parties, not issues they could have, but did not, raise. The record simply does not support a conclusion that the district court in this instance ruled on an issue that defendant failed to raise.
¶ 65 Colorado case law is clear that if the defendant fails to raise a particular reason *25 for suppression in the district court, he may not raise it on appeal. People v. Samuels, 228 P.3d 229, 238 (Colo.App.2009) ; People v. Salyer, 80 P.3d 831, 835 (Colo.App.2003). Thus, I would not address defendant's new argument.[1] Because I agree with Judge Fox that defendant's contention regarding the videotape of his interview fails, I would affirm the judgment of conviction.

Judge Fox would find the admission harmless beyond a reasonable doubt as to conspiracy to commit first degree murder and witness intimidation as well.

As explained more fully in Judge Ney's dissent, Judge Ney only agrees that the error was harmless as to Carter's conviction for unlawful distribution of a controlled substance, not his convictions for conspiracy to commit first degree murder and intimidating a witness.

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S. 2014.

The People's answer brief says that they "generally agree that the claim was preserved because the adequacy of the advisement was raised in the motion," but continues that "the defense did not specifically argue below that the advisement was inadequate for failing to make explicit the right to the presence of counsel during questioning." To the extent this ambiguous passage is intended as a concession regarding preservation, we are not bound by it. People v. Corral, 174 P.3d 837, 839 (Colo.App.2007) ; People v. Backus, 952 P.2d 846, 850 (Colo.App.1998).