The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Jose Alfredo MEJIA–MENDOZA,
Defendant–Appellee.

No. 98SA127.

Supreme Court of Colorado,
En Banc.

Sept. 14, 1998.

F. Michael Goodbee, District Attorney, Fifth Judicial District, Edward J. Casias, Chief Deputy District Attorney, Breckenridge, for Plaintiff-Appellant.

David F. Vela, Colorado State Public Defender, Dale W. McPhetres, Deputy State Public Defender, Silverthorne, for Defendant-Appellee.

Justice BENDER delivered the Opinion of the Court.

The People bring this interlocutory appeal to challenge the trial court's order suppressing statements made to police by the defendant, Jose Alfredo Mejia–Mendoza. The trial court ruled that, although Mejia–Mendoza voluntarily waived his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), he did not do so knowingly and intelligently. The basis for the suppression order was that the People failed to prove that Mejia–Mendoza understood his rights under *Miranda*. Applying the totality of the circumstances test, we hold that the

record supports the trial court's suppression of Mejia–Mendoza's statements. We affirm the suppression order and remand the case for further proceedings.

## I. FACTS

During the early morning hours of November 23, 1997, the Silverthorne Police arrested Mejia–Mendoza on suspicion of sexual assault and third degree assault. After transporting Mejia–Mendoza to the Silverthorne Police Department, the police placed him in a small observation room for questioning. Mejia–Mendoza's hands were cuffed and bagged to preserve potential forensic evidence. Mejia–Mendoza waited alone in the interview room for over an hour until Detective Bradley entered at 3:30 a.m. Because Mejia–Mendoza is a native of Mexico and speaks little or no English, the police provided two Spanish-speaking interpreters. The police used one of the interpreters to translate the detective's English questions into Spanish and to translate Mejia–Mendoza's Spanish responses into English. It is unclear what role the other interpreter played.

In a tape-recorded session, the detective instructed an interpreter to inform Mejia–Mendoza of his *Miranda* rights.[1] Reading from a *Miranda* form printed in English, the interpreter advised Mejia–Mendoza in Spanish that he had a right to remain silent, that any statement he made might be used as evidence against him, and that he had a right to the presence of an attorney, either retained or appointed. This advisement was read without pause and without an opportunity for Mejia–Mendoza to indicate whether he understood each individual right. Upon finishing the advisement, the interpreter asked Mejia–Mendoza if he had any questions regarding his rights. The transcript indicates that Mejia–Mendoza said nothing.

Without instruction from the detective, the interpreter made the following erroneous and conflicting statements to Mejia–Mendoza about waiving his *Miranda* rights:

1. The police tape-recorded Mejia–Mendoza's interrogation, which was then transcribed, translating the Spanish sections into English.

[Y]ou won't make any promises, that there hasn't been made any, that nothing has been promised to you. We haven't, no-one has promised you anything. Whatever you say could be used against you. *Just because you say something you'll be released, are we clear?* There is no promises. There is no pressure, no one is pressuring you. No one is forcing you by any means to make you talk will you agree?

(Emphasis added.) Mejia–Mendoza nodded his head and stated "Mhm," which the trial court characterized as an apparent affirmative response. The interpreter then provided confusing and misleading information regarding Mejia–Mendoza's privilege against self-incrimination:

*Nothing is being used against you.* And you understand that you can quit answering questions, ok? And you can, now you can answer just the questions that you want to answer. Do you understand that?

(Emphasis added.) The transcript indicates that there is an "unintelligible" response and that the interpreter informed the detective that Mejia–Mendoza understood the advisement.

The interpreter next asked Mejia–Mendoza if he wanted to make a statement. Mejia–Mendoza replied that he did not understand the nature of the charges or why the complaining witness was accusing him. Mejia–Mendoza admitted that he had had "relations" with the complaining witness on other occasions and stated that the complaining witness had called him on the telephone earlier that day to "be with her." Then the interpreter asked Mejia–Mendoza if he wanted an attorney and Mejia–Mendoza said that he could not afford an attorney. In response to this statement, the interpreter gave Mejia–Mendoza the following advisement about his right to counsel:

If you don't have an attorney, the Court will give you an attorney. That is the most important thing is that you feel comfortable about making a statement. Then we can continue with this case. Do you agree?

Mejia–Mendoza said that he agreed and again stated that he had previously been in a relationship with the complaining witness who had telephoned him earlier that day.

The detective asked the interpreter to stop Mejia–Mendoza from making any further statements and told the interpreter to make sure that Mejia–Mendoza understood his rights. The interpreter asked Mejia–Mendoza if he understood his rights, and he replied "Mhm." Despite the ambiguous nature of this reply, the interpreter informed the detective that Mejia–Mendoza understood the advisement.

Because his hands were cuffed and bagged, Mejia–Mendoza was unable to sign a waiver form. The interpreter did not ask Mejia–Mendoza if he wanted to waive his rights. Instead, the interpreter informed the detective that Mejia–Mendoza understood his rights and was willing to talk. Apparently unsure whether Mejia–Mendoza understood his rights, the detective again asked the interpreter if Mejia–Mendoza understood that he could have an attorney present during questioning and that he could terminate the interview whenever he wanted. Without conferring with Mejia–Mendoza, the interpreter replied that Mejia–Mendoza understood his rights and did not want to speak with an attorney. Apparently convinced that the tape recording would suffice as proof of a valid waiver, the detective questioned Mejia–Mendoza and elicited additional incriminating statements.

Mejia–Mendoza filed a motion to suppress statements given to the police, arguing that his waiver was involuntary due to an improper *Miranda* advisement. After conducting a preliminary hearing, the trial court granted the motion to suppress, finding that the People had failed to prove by a preponderance of the evidence that Mejia–Mendoza understood his right to have an attorney present during questioning and his right to a court-appointed attorney if he could not afford to hire an attorney. In its findings of fact, the trial court reviewed the transcript of the interview as well as the testimony at the suppression hearing. The trial court found credible Mejia–Mendoza's testimony that he was unaware of his right to have an attorney present during questioning. The trial court noted the interpreter's lack of previous training

in either interpretation skills or assisting law enforcement personnel in explaining *Miranda* rights to arrested persons. The trial court observed that the interpreter did not understand the terms of the *Miranda* advisement in order to convey them properly in Spanish to Mejia–Mendoza. Further, the trial court found that the detective did not speak Spanish and thus was unaware of the errors made by the interpreter.[2]

The People argue on appeal that the trial court erred because the evidence presented at the hearing showed conclusively that before giving the statement to the police, Mejia–Mendoza made a voluntary, knowing, and intelligent waiver of his right to counsel. We disagree with the People's contention and affirm the trial court's suppression ruling.

## II. APPLICABLE LAW

 In *Miranda*, the United States Supreme Court created a prophylactic rule requiring law enforcement officers to advise a person undergoing custodial interrogation of his or her rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation. *See Miranda*, 384 U.S. at 444, 86 S.Ct. 1602. Once the police advise a suspect of his or her rights under *Miranda*, the suspect may waive those rights, provided the waiver is made voluntarily, knowingly, and intelligently. *See People v. May*, 859 P.2d 879, 882 (Colo.1993); *see also Miranda*, 384 U.S. at 444, 86 S.Ct. 1602. The remedy for an improper waiver is suppression of the confession obtained from the defendant. *See Miranda*, 384 U.S. at 476, 86 S.Ct. 1602.

 When a defendant objects to the introduction of an incriminating statement on the basis that law enforcement officials obtained the statement in violation of *Miranda*, the People have the burden of proving by a preponderance of the evidence that the statement was made after a voluntary, knowing,

and intelligent waiver of *Miranda* rights. *See Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *May*, 859 P.2d at 882; *People v. Sandoval*, 736 P.2d 1201, 1204 (Colo.1987). To determine if a voluntary, knowing, and intelligent waiver occurred, courts examine the totality of the circumstances surrounding the custodial interrogation, including any language barriers encountered by a defendant. *See May*, 859 P.2d at 882; *see also People v. Jiminez*, 863 P.2d 981, 986 (Colo.1993).

 The question of whether a waiver is voluntary, knowing, and intelligent involves two distinct inquiries. First, the waiver must be a voluntary act, which is an act that is the result of " 'a free and deliberate choice rather than intimidation, coercion, or deception.' " *People v. Pease*, 934 P.2d 1374, 1377 (Colo.1997) (quoting *People v. Hopkins*, 774 P.2d 849, 851 (Colo.1989)).[3] Second, the waiver must be knowing and intelligent, meaning that the defendant possesses an awareness of both the nature of the right and the consequences of the decision to waive it. *See May*, 859 P.2d at 882.

 Appellate courts are not the appropriate forum to resolve factual discrepancies or to determine the credibility of witnesses. *See People v. Turtura*, 921 P.2d 40, 44 (Colo. 1996) (recognizing that credibility of witnesses, probative effect, weight of evidence, and inferences and conclusions to be drawn therefrom are all within the province of the trial court as trier of fact). The trial court's findings of historical fact are entitled to deference by a reviewing court and will not be reversed upon appeal when they are supported by competent evidence in the record. *See People v. Quezada*, 731 P.2d 730, 732 (Colo.1987).

## III. ANALYSIS

 Applying these principles of law to this case, we agree with the trial court that

---

2. We note that the detective tape-recorded and asked questions during the interview indicating that he made every attempt to ensure that Mejia–Mendoza fully understood and voluntarily waived his rights.

3. Resolution of this issue requires inquiry into the conduct of the police in obtaining the waiver. *See May*, 859 P.2d at 883. We do not address the voluntariness of Mejia–Mendoza's confession because issues raised by the defendant are generally not considered in interlocutory appeals. *See People v. Staton*, 924 P.2d 127, 133 (Colo.1996).

the People failed to prove by a preponderance of the evidence that Mejia–Mendoza knowingly and intelligently waived his *Miranda* rights. The trial court based its suppression ruling on Mejia–Mendoza's failure to knowingly and intelligently waive his right to counsel. As a result of observing the witnesses testify at the suppression hearing, listening to the tape recording of the advisement, and reading the English translation of the advisement, the trial court concluded that the interpreter was unable to understand and properly convey the *Miranda* advisement to Mejia–Mendoza. Our review of the record, based on the totality of the circumstances surrounding the advisement, demonstrates that Mejia–Mendoza was not properly advised of his *Miranda* rights at the time of the interrogation.[4] The transcript of the advisement and the testimony presented at the suppression hearing support the trial court's conclusion that Mejia–Mendoza did not knowingly and intelligently waive his *Miranda* rights. The interpreter was untrained in translation and in assisting law enforcement in explaining *Miranda* rights to arrested persons. Rather than directly translating the *Miranda* advisement, the interpreter provided misleading and confusing statements to Mejia–Mendoza regarding his waiver and privilege against self-incrimination. The interpreter told Mejia–Mendoza that "[n]othing is being used against you" and "[j]ust because you say something you'll be released." These statements failed to reasonably convey to Mejia–Mendoza his rights as required by *Miranda*. *See Miranda*, 384 U.S. at 469, 86 S.Ct. 1602 ("The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court.").

In this case, the interpreter not only mistranslated the *Miranda* advisement but also volunteered statements, both to Mejia–Mendoza and on his behalf to the detective, that were inaccurate. The role of an interpreter in this setting is to act as a conduit by passing information between two participants, translating their words precisely without adding any of his or her own. "Obviously, an Interpreter is not a participant.... An Interpreter really only acts as a transmission belt or telephone. In one ear should come in English and out comes Spanish." *United States v. Anguloa*, 598 F.2d 1182, 1186 n. 5 (1979) (quoting the trial court's instructions to the jury). Interpreters have an ethical obligation to perform their duties scrupulously. "[E]thical guidelines require interpreters to 'transmit everything that is said in exactly the same way it was intended.'" *Zobrest v. Catalina Foothills Sch. Dist.*, 509 U.S. 1, 13, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993).

Many jurisdictions have statutory standards or certification programs for in-court interpretation,[5] and Colorado Rules of Evidence require interpreters to meet the standards of experts.[6] We recognize that such exacting standards cannot be mandated in the more informal setting of police interrogation. However, a person's constitutional rights are no less meaningful during a police interrogation than in court, and a person acting as an interpreter must be sufficiently capable of accurately expressing the substance of the suspect's rights.

> While the exigencies of the moment often dictate that authorities settle for less outside of the court than is required in court, it does not follow that outside of court, any interpretation will do. Under any standard, the use of an uneducated and inexperienced translator who took an active role

---

**4.** Although the trial court found that the *Miranda* warning was insufficient specifically with regard to Mejia–Mendoza's right to counsel, we find that the *Miranda* advisement did not adequately convey any of Mejia–Mendoza's *Miranda* rights to him.

**5.** *See Court Interpreters Act*, 28 U.S.C. § 1827(b)(1): "The Director shall prescribe, determine, and certify the qualifications of persons who may serve as certified interpreters"; *Oregon Rules of Court: Code of Professional Responsibili-*

*ty for Interpreters in the Oregon Courts*, Sections 1–11 (1995); *Code of Professional Responsibility for Interpreters in the Minnesota State Court System*, 15 Minn.Stat. Canons 1–10 (1996); *see also* 27 Charles Alan Wright and Victor James Gold, Federal Practice and Procedure: Evidence § 6051 (1990).

**6.** "An interpreter is subject to the provisions of these rules relating to qualification as an expert and the administration of an oath or affirmation that he will make a true translation." CRE 604.

in encouraging [the defendant] to cooperate was inadequate.

*United States v. Hernandez,* 93 F.3d 1493, 1504 n. 3 (Lucero, J., concurring in part, dissenting in part).

Although we acknowledge that no translation is perfect, the transcript of the advisement reveals that the interpreter made inaccurate word choices, embellished the advisement with misleading statements, and improperly told the detective that Mejia–Mendoza had waived his rights when he had said nothing. The interpreter's deficiencies contributed to Mejia–Mendoza's inability to understand his *Miranda* rights. Since these findings are supported by competent evidence and the trial court applied the correct legal standard, we affirm the trial court's suppression ruling.