2017 CO 92

**The PEOPLE of the State of Colorado, Plaintiff-Appellant**

v.

**Hung Van NGUYEN, Defendant-Appellee.**

**Supreme Court Case No. 17SA37**

Supreme Court of Colorado.

October 2, 2017

Attorneys for Plaintiff-Appellant: Beth McCann, District Attorney, Second Judicial District Victoria M. Cisneros, Deputy District Attorney Denver, Colorado

Attorneys for Defendant-Appellee: Douglas K. Wilson, Public Defender Karin B. Williamson, Deputy Public Defender Denver, Colorado

JUSTICE EID delivered the Opinion of the Court.

¶1 Defendant Hung Van Nguyen, who only speaks Vietnamese, waived his rights as provided by Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), after they were translated to him by a chaplain for the Denver Police Department. The trial court ruled that the defendant's waiver was voluntary, but not knowing and intelligent, because the translation could be considered "confusing." The court therefore suppressed Nguyen's statements.

¶2 The People brought this interlocutory appeal, and we now reverse the trial court's suppression order. The question here is whether the translation "reasonably convey[ed]" to Nguyen his rights under Miranda. See People v. Mejia-Mendoza, 965 P.2d 777, 781 (Colo. 1998). Primarily at issue is whether the translation, which stated that if Nguyen waived his right to be silent, "[a]ll you say will and may be used as evidence in court," reasonably conveyed the Miranda warning that anything he said could be used against him in court. We conclude that it did. By informing him that his statements could be used in court, the translation included the concept that the statements could be used against him (as well as for him) in court. The fact that the warning may have left open the possibility that Nguyen's statements could be used in his favor did not countermand the fact that they could be used against him. Secondarily, we address whether the translation reasonably conveyed to Nguyen the warning, as required by Miranda, that if he could not afford an attorney one would be appointed for him prior to questioning. We conclude that it did. Accordingly, we reverse the trial court's suppression order and remand the case for further proceedings.

## I.

¶3 The following facts come from the proceedings before the trial court and appear to be undisputed. A witness told police that "Hung" had stabbed the victim. Riding in a patrol car, the witness directed officers to a home where he believed Hung was located. The witness gave officers a phone number he said belonged to Hung, which an officer called. Nguyen came out of the home, and the witness positively identified him as Hung. Nguyen was handcuffed, transported to the police station, and interrogated.

¶4 Nguyen spoke only Vietnamese. The questioning officer, Detective Vacca, called in Father Dang, a precinct chaplain who speaks Vietnamese, to act as an interpreter. Father Dang was not a certified Vietnamese interpreter. Detective Vacca read Nguyen his Miranda rights one by one, and Father Dang followed with a translation. The exchange, in relevant part, occurred as follows:

DETECTIVE VACCA: [S]o you have the right to remain silent.

FATHER DANG: Uh ... you have the right to be silent ... silent, alright?

DETECTIVE VACCA: You understand that?

FATHER DANG: Understand?

HUNG NGUYEN: Yes.

. . . .

DETECTIVE VACCA: Anything you say can be used as evidence against you in court. You understand that?

FATHER DANG: All you say will and may be used as evidence in court, understand?

. . . .

HUNG NGUYEN: Yeah.

DETECTIVE VACCA: Thank you . . . Uh . . . you have the right to talk to an attorney . . .

. . . .

DETECTIVE VACCA: . . . The right to talk to a lawyer before questioning and have him present during questioning, you understand that?

FATHER DANG: Obviously you have right to talk to a lawyer who represents you before you answer the questions or to let that person represents you before the questions . . . during questioning, understand?

HUNG NGUYEN: Yes.

FATHER DANG: Yes.

DETECTIVE VACCA: If you cannot afford a lawyer one will be appointed for you without cost before questioning. You understand that?

FATHER DANG: And if you do not have money to hire an attorney the court will instruct you, will appoint a person to you at no cost to represent you before asking questions, understand?

HUNG NGUYEN: Yes.

. . . .

DETECTIVE VACCA: Ok, so I just want to be clear, you understand your Miranda rights and you don't have to talk to me, you can talk to a lawyer instead.

FATHER DANG: Because we want you to understand that you have the right to hire an attorney to represent you and you do not need to answer us right now, understand?

HUNG NGUYEN: Understand[.]

Nguyen then spoke with Detective Vacca about the stabbing incident.

¶ 5 Nguyen filed a motion to suppress his statements, arguing that Father Dang had omitted and mistranslated crucial words, rendering his Miranda waiver ineffective. In particular, Nguyen focused on the fact that Father Dang translated the second Miranda warning as, "[a]ll you say will and may be used as evidence in court, understand," omitting the words "against you."[1] The trial court stated that it "[did not] think the fine points of law as to whether something could be used against him or whether that would be in the average defendant's head in this case" was dispositive of the case, but rather that the translation "could be considered confusing." It found that Nguyen's statements were "voluntary," but concluded that they were not necessarily "knowing or intelligent." The trial court thus granted Nguyen's motion to suppress the statements.

¶ 6 The People filed this interlocutory appeal pursuant to section 16-12-102(2), C.R.S. (2017) and C.A.R. 4.1, asserting that the Miranda waiver was knowing and intelligent. We agree with the People, and we therefore reverse the trial court's suppression order and remand for further proceedings.

## II.

¶ 7 Given the inherently coercive nature of police custodial interrogation, the United States Supreme Court has set forth specific safeguards in order to protect the privilege against self-incrimination. Miranda, 384 U.S. at 444, 86 S.Ct. 1602. In particular, officers must inform a suspect that he has a right to remain silent; that if he waives his right to that silence anything he says may be used against him in a court of law; that he has the right to have an attorney present; and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so wishes. Id. at 479, 86 S.Ct. 1602. In the absence of a proper advisement, a defendant's statements are not admissible

---

1. Later in the interview, Detective Vacca again asked Nguyen, "[D]o you understand that if you talk to me that anything you say I will use in court against you?" Father Dang translated this as, "Knowing that Hung knows that today what Hung talks to the police will and may be use[d] in court, understand?" Again, the words "against you" were omitted.

in the prosecution's case in chief. Sanchez v. People, 2014 CO 56, ¶ 11, 329 P.3d 253, 257.

■ ¶ 8 A valid waiver of one's Miranda rights must be voluntary, knowing, and intelligent. Miranda, 384 U.S. at 444, 86 S.Ct. 1602. In this case, the trial court found that the waiver was voluntary, but not knowing and intelligent.[2] The trial court, echoed here by Nguyen, concluded that because the translation failed to adequately convey to Nguyen his Miranda rights, his waiver could not be knowing and intelligent. The question before us, then, is whether the translation "reasonably convey[ed]" to Nguyen his Miranda rights. See Mejia-Mendoza, 965 P.2d at 781 (concluding that the translator's statements "failed to reasonably convey to [the defendant] his rights as required by Miranda"); People v. Aguilar-Ramos, 86 P.3d 397, 402 (Colo. 2004) (concluding that "[W]here, as here, the police fail to accurately communicate to the defendant his basic rights under Miranda, and the defendant is therefore unable to understand those rights, any resulting waiver must be deemed constitutionally insufficient"). Looking at the totality of the circumstances, we review this legal question de novo. Aguilar-Ramos, 86 P.3d at 400–01.

■ ¶ 9 Specifically, Nguyen argues that he was not informed (1) of the fact that his statements could be used against him in a court of law, or (2) that if he could not afford an attorney one would be appointed for him prior to questioning. We address each argument in turn.

¶ 10 During questioning, Detective Vacca read the Miranda warnings, which Father Dang then translated. As relevant here, Detective Vacca stated, "Anything you say can be used as evidence against you in court. You understand that?" Father Dang translated this warning as, "All you say will and may be used as evidence in court, understand?" Later in the interview, Detective Vacca repeated the question, "[D]o you understand that if you talk to me that anything you say I will use in court against you?" Father Dang

translated this as "Hung knows that today what Hung talks to the police will and may be use[d] in court, understand?" Therefore, the translations stated that Nguyen's statements could be used as evidence in court, but they did not include the words "against you."

¶ 11 Nguyen argues that by omitting the words "against you," the advisements were misleading, because statements made during interrogation are generally not used in the defendant's favor at trial. We disagree.

¶ 12 By informing Nguyen that his statements could be used in court, the translations included the concept that the statements could be used against him (as well as for him) in court. In other words, the advisements did in fact inform Nguyen that his statements could be used against him. Importantly, then, the problem presented in this case is potentially one of overinclusion (that is, that Nguyen's statements would be used both for and against him), not underinclusion. We do not believe that leaving open the possibility that statements could be used in Nguyen's favor somehow nullified the concept that they would be used against him.

¶ 13 Moreover, it seems unlikely that a defendant in Nguyen's situation would understand that his responses to the detective's questioning would be used "for him" in court in any event. Indeed, Nguyen was properly warned that he had a right to remain silent. The very reason a defendant is informed that he has the right to remain silent is that any decision to talk to police can have serious consequences. See Miranda, 384 U.S. at 468–69, 86 S.Ct. 1602. A defendant in Nguyen's position would reasonably understand that if he gave statements that implicated him in the stabbing, those statements would be used in court against him, not for him.

¶ 14 Our recent decision in Carter v. People, 2017 CO 59M, ¶ 14, 398 P.3d 124, 127–28, is instructive. There, the defendant was advised, "You have the right to have an attorney." Id., 398 P.3d at 128. The defendant

2. Nguyen also argues before this court that his waiver was not voluntary. However, the trial court held that the waiver was voluntary, and Nguyen has no right of interlocutory appeal to challenge that ruling. See § 16-12-102(2); C.A.R. 4.1. We therefore do not consider his arguments regarding voluntariness. See Mejia-Mendoza, 965 P.2d at 780 n.3 (declining to address the defendant's arguments regarding voluntariness, because they were not properly raised on interlocutory review).

argued that <u>Miranda</u> required that he be advised more specifically that his right to an attorney would apply both before and during any interrogation by the police. <u>Id.</u> at ¶ 8, 398 P.3d at 126. We rejected this argument, and instead observed that the lack of a temporal limitation in the advisement permitted the inference that the right to an attorney could be exercised both before and during questioning. <u>Id.</u> at ¶ 14, 398 P.3d at 127–28. We then concluded that, given the overall context of the advisement, "[I]t would be highly counterintuitive for a reasonable suspect in a custodial setting, who has just been informed that the police cannot talk to him until after they advise him of his rights to remain silent and to have an attorney, to understand that an interrogation may then proceed without permitting him to exercise either of those rights." <u>Id.</u>, 398 P.3d at 128. Similarly here, having just been informed of his right to remain silent and that "[a]ll you say will and may be used as evidence in court," a reasonable suspect would not conclude that his statements to the police would be used in his favor.

¶ 15 Finally, this case is plainly distinguishable from <u>Mejia-Mendoza</u>, ·on which Nguyen relies. There, we found that the defendant's waiver was not knowing and intelligent where the interpreter erroneously told the defendant that "[n]othing is being used against you." <u>Mejia-Mendoza</u>, 965 P.2d at 781. This statement, of course, is entirely inaccurate; it suggests that, contrary to the purpose of the <u>Miranda</u> warning, no statements made would have any consequences. Here, by contrast, the translations at issue did warn Nguyen that his statements would have consequences in court.

¶ 16 As we have noted in the past, "no translation is perfect." <u>Id.</u> at 782. Indeed, although the <u>Miranda</u> warnings are an absolute prerequisite, they need not be conveyed through any particular "talismanic incantation." <u>Sanchez</u>, ¶ 12, 329 P.3d at 257. Instead, looking at the totality of circumstances surrounding the advisement, the question in this case is whether Nguyen was advised that his

statements regarding his role, if any, in the stabbing could be used against him in court. We conclude that this concept was properly conveyed to, and thus understood by, Nguyen.

¶ 17 Nguyen also claims he was not properly informed that if he could not afford an attorney, one would be appointed for him prior to questioning. First, he focuses on that portion of the translation stating, "[I]f you do not have money to hire an attorney the court will instruct you, will appoint a person to you at no cost to represent you before asking questions, understand?" Nguyen argues that the use of the term "instruct" was misleading. However, Father Dang corrected himself soon after using that term, stating that the court "<u>will appoint</u> a person to you at no cost to represent you."· (Emphasis added.) We therefore conclude the use of the word "instruct" had no bearing on whether the right to an appointed attorney was properly conveyed.

¶ 18 Along these same lines, Nguyen takes issue with the translated statement that the court would appoint "a person," rather than a lawyer. Yet the statement referred to "a person … to represent you"—in other words, a lawyer. And in the phrase immediately preceding, the translation referred to "an attorney"; therefore, the word "person" is naturally read to refer back to "an attorney." Again, taking the advisement in context, we conclude that the right to an appointed attorney was reasonably conveyed.

¶ 19 Finally, Nguyen suggests that he was not adequately informed of the timing of the appointment. He asserts that while he was informed that the court would "appoint a person to you at no cost to represent you <u>before asking questions</u>" (emphasis added), this phrasing could leave the impression that the attorney would be appointed prior to questioning by the court at trial. However, no such impression was possible, given the translator's follow-up: "Because we want you to understand that you have the right to hire an attorney to represent you and <u>you do not need to answer us right now, understand?</u>"[3]

---

**3.** Nguyen also argues that the use of the word "hire" here suggests that Nguyen would have to pay for an attorney. We again disagree with this reading of the advisement. As noted above, Nguyen was informed before this, "[I]f you do not

have money to hire an attorney the court will instruct you, <u>will appoint a person to you at no cost to represent you</u> before asking questions, understand?" (Emphasis added.)

In sum, we conclude that Nguyen was properly informed and understood that if he could not afford an attorney, one would be appointed for him prior to questioning.

¶ 20 The trial court in this case stated that it was not basing its suppression order on the "fine points of law as to whether something could be used against him or whether that would be in the average defendant's head in this case." Instead, citing Mejia-Mendoza, it concluded that "the translation that I read, it could be considered confusing." In Mejia-Mendoza, however, we found the advisement to be "misleading and confusing" because the translation "failed to reasonably convey to [the defendant] his rights as required by Miranda." 965 P.2d at 781. As noted above, in that case, the interpreter erroneously told the defendant that nothing the defendant said would be used against him. Id. In addition, inter alia, the interpreter erroneously told the defendant that if the defendant said something he would be released, and generally stepped out of the role of interpreter by volunteering, rather than translating, statements. Id. Here, by contrast, we conclude that the translation did adequately convey to Nguyen his Miranda rights. Accordingly, we reverse the trial court's suppression order.

### III.

¶ 21 For the reasons stated above, we reverse the trial court's order suppressing Nguyen's statements and remand the case for further proceedings.

JUSTICE MÁRQUEZ dissents, and JUSTICE HOOD and JUSTICE GABRIEL join in the dissent.

JUSTICE MÁRQUEZ, dissenting.

¶ 22 Upon learning that Hung Nguyen spoke only Vietnamese, Detective James Vacca asked police chaplain Father Dang to interpret for him during his interrogation of Nguyen. Father Dang was not a certified Vietnamese interpreter, and Detective Vacca had never used Father Dang to translate or interpret before. The certified translation of Nguyen's Miranda advisement reveals repeated mistranslations of both the detective's questions and Nguyen's responses. The trial court suppressed Nguyen's statements, concluding that his Miranda advisement was confusing and therefore, the waiver of his Miranda rights was not knowing and intelligent.

¶ 23 In reversing the trial court's suppression ruling, the majority focuses exclusively on the initial articulation of rights translated to Nguyen during his Miranda advisement and ignores the remainder of the exchange between Detective Vacca, Father Dang, and Nguyen when the detective asked Nguyen if he wanted to waive his rights. A review of the entire advisement reveals Nguyen's confusion about the nature of his rights and his lack of understanding regarding the initial advisement. Notably, Father Dang never said to Nguyen that his statements to the detective could be used against him in court, as is required by Miranda. In addition, Father Dang's mistranslation of Nguyen's right to have an attorney present at no cost during questioning suggested that if Nguyen did not already have an attorney or could not afford one, the court would appoint a "person" to represent him—not necessarily an attorney. Moreover, Father Dang later gave more confusing information to Nguyen, telling him that he could "hire" an attorney, contradicting his earlier reference to an "appointed" representative in the event that Nguyen could not afford an attorney.

¶ 24 Here, the totality of the circumstances demonstrates that Father Dang was not "capable of accurately expressing the substance of the suspect's rights," see People v. Mejia-Mendoza, 965 P.2d 777, 781 (Colo. 1998), and that Nguyen did not "minimally understand" his rights such that he could validly waive them, see People v. Aguilar-Ramos, 86 P.3d 397, 402 (Colo. 2004). Although law enforcement authorities must sometimes "settle for less outside of the court than is required in court, it does not follow that outside of court, any interpretation will do." Mejia-Mendoza, 965 P.2d at 781 (quoting United States v. Hernandez, 93 F.3d 1493, 1505 n.3 (10th Cir. 1996) (Lucero, J., concurring in part, dissenting in part)). In light of Father Dang's repeated mistranslations and Nguyen's apparent confusion, I conclude that Nguyen did not knowingly and intelligently waive his Miranda rights. Accordingly, I respectfully dissent.

## I. Applicable Law

¶ 25 "To determine if a voluntary, knowing, and intelligent waiver occurred, courts examine the totality of the circumstances surrounding the custodial interrogation, including any language barriers encountered by a defendant." Mejia-Mendoza, 965 P.2d at 780. The prosecution must prove the validity of the waiver by a preponderance of the evidence. People v. Al-Yousif, 49 P.3d 1165, 1168 (Colo. 2002). Although we review de novo the legal question of whether the defendant sufficiently understood his rights to waive them, id. at 1167, we defer to the trial court's findings of historical fact and will not disturb those findings on appeal when they are supported by competent evidence in the record, Mejia-Mendoza, 965 P.2d at 780.

¶ 26 In addition to being voluntary, a defendant's waiver of his Miranda rights must also be knowing and intelligent, which means that the defendant must possess an awareness of both the nature of a right and the consequences of his decision to waive it. Id. Where there is a language barrier between the interrogator and the suspect, we have identified several considerations for determining whether a waiver was knowing and intelligent. In this situation, it is not relevant whether a defendant understood the "origin or purpose of constitutional rights, or the tactical implications of waiving them." Al-Yousif, 49 P.3d at 1172. Rather, our analysis turns on whether the defendant understood that: (1) he did not have to talk; (2) he could have an attorney present; (3) if he could not afford an attorney, one would be appointed for him; and (4) if he did talk, his statements could be used against him. Id.; Sanchez v. People, 2014 CO 56, ¶ 12, 329 P.3d 253, 257. No translation is perfect, Aguilar-Ramos, 86 P.3d at 401, but "a person acting as an interpreter must be sufficiently capable of accurately expressing the substance of the suspect's rights," Mejia-Mendoza, 965 P.2d at 781. Where the advisement as a whole reveals difficulties in communication and understanding, we have concluded that a suspect did not "minimally understand" his rights such that he could knowingly and intelligently waive them. See Aguilar-Ramos, 86 P.3d at 402.

¶ 27 When upholding a trial court's suppression order, we have emphasized that the totality of circumstances governs this analysis: "[The defendant] did not make a knowing and intelligent waiver of his Miranda rights because of the combined effects of the translator's inadequate translation, the substantial miscommunication between the parties, and [his] cultural background and limited intellectual functioning." People v. Redgebol, 184 P.3d 86, 92 (Colo. 2008) (emphasis added). For example, we have concluded that a defendant did not sufficiently understand his rights where it took multiple attempts for a detective to learn a suspect's name; where the suspect responded "yes" when asked if he understood his rights, but similarly responded "yes" at other, inappropriate moments; and where the "disjointed nature of the questions and answers" throughout the interrogation revealed difficulties in communication. Aguilar-Ramos, 86 P.3d at 402. We have also held that a suspect's waiver was not knowing and intelligent where an interpreter provided misleading and confusing statements to the suspect. Mejia-Mendoza, 965 P.2d at 781. Notably, the interpreter in Mejia-Mendoza was untrained in translation or assisting law enforcement in explaining Miranda rights. See id.

## II. The Advisement Did Not Reasonably Convey Nguyen's Miranda Rights

¶ 28 Viewed in its entirety, the advisement here did not reasonably convey Nguyen's Miranda rights. I therefore conclude that Nguyen did not knowingly and intelligently waive his rights. First, I disagree with the majority's conclusion that the advisement, as translated, informed Nguyen that his statements could be used in court against him. See maj. op. ¶¶ 2, 11–16. Next, I also disagree with the majority's conclusion that the advisement adequately conveyed Nguyen's right to have an attorney appointed prior to questioning. See id. at ¶¶ 2, 17–19. Finally, I disagree with the majority's analysis as a whole because it addresses the mistranslations in isolation and fails to consider the totality of the circumstances in determining whether Nguyen knowingly and intelligently waived his rights.

¶ 29 Nguyen first argues that Father Dang's translated advisement failed to ade-

quately convey that Nguyen's statements could be used against him at trial. Detective Vacca asked Nguyen, "Anything you say can be used as evidence against you in court. You understand that?" Father Dang translated this as, "All you say will and may be used as evidence in court, understand?" Later in the advisement when Detective Vacca sought to clarify Nguyen's understanding, he asked, "[D]o you understand that if you talk to me that anything you say I will use in court against you?" Father Dang again omitted the word "against," and mistranslated this question as, "Knowing that Hung knows that today what Hung talks to the police will and may be use[d] in court, understand?"

¶ 30 The majority concludes that this mistranslation reasonably conveyed to Nguyen that anything he said would be used against him in court, even though the translation does not expressly state this. See id. at ¶¶ 2, 12. I disagree. The majority reasons that by informing Nguyen that his statements could be "used in court," the translation "included the concept that the statements could be used against him (as well as for him) in court," thus reasonably conveying the Miranda warning that anything he said could be used against him in court. See id. at ¶ 2. The majority frames the problem as one of potential overinclusion, not underinclusion. See id. at ¶12. Instead, it is a problem of specificity: Nguyen was never actually informed that his responses could be used against him, yet Miranda plainly requires that this aspect of the warning be fairly communicated. Miranda v. Arizona, 384 U.S. 436, 469, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ("The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court.... [T]his warning may serve to make the individual more acutely aware that he is faced with a phase of the adversary system—that he is not in the presence of persons acting solely in his interest."(emphasis added)).

¶ 31 The majority's conclusion that Nguyen was aware of this concept hinges on a series of inferences not supported by the record or the trial court's findings. For example, the majority reasons, "it seems unlikely that a defendant in Nguyen's situation would understand that his responses to the detective's questioning would be used 'for him' in court in any event," and that "[a] defendant in Nguyen's position would reasonably understand that if he gave statements that implicated him in the stabbing, those statements would be used in court against him, not for him." Maj. op. ¶ 13. But nothing in the record supports these appellate court findings. The trial court made no such findings, nor did Nguyen testify at the suppression hearing. To the contrary, the entire exchange, as discussed further below, supports a conclusion that Nguyen was confused both about the nature of his rights and the consequences of the decision to waive them. See Mejia-Mendoza, 965 P.2d at 780. To the extent that the majority's conclusions assume that Nguyen had some background knowledge, the record contains no information about Nguyen's familiarity with the adversarial nature of the American legal system. We know only that he spoke only Vietnamese.

¶ 32 Additionally, I agree with Nguyen that the translated advisement, read as a whole, did not reasonably convey his right to have an attorney present during questioning at no cost. Detective Vacca advised Nguyen that he had the "right to talk to a lawyer before questioning and have him present during questioning," which Father Dang translated as, "Obviously you have right to talk to a lawyer who represents you before you answer the questions or to let that person represent[ ] you ... during questioning, understand?" (emphasis added). Detective Vacca added, "If you cannot afford a lawyer one will be appointed for you without cost before questioning," which Father Dang translated as, "And if you do not have money to hire an attorney the court will ... appoint a person to you at no cost to represent you before asking questions." (emphasis added).

¶ 33 Two aspects of this advisement are confusing and potentially misleading. First, it suggested that Nguyen could talk to a lawyer before questioning—but only if he already had one. Second, it suggested that if Nguyen could not afford an attorney, a "person"—not necessarily a lawyer—would be appointed to represent him. In short, Father Dang's translation did not adequately convey that

Nguyen could have a lawyer appointed for him at no cost before the detective asked him questions.

¶ 34 I disagree with the majority's reasoning that because Father Dang previously referred to "an attorney," the word "person" is "naturally read to refer back to 'an attorney.'" Maj. op. ¶ 18. Nothing in the record supports the conclusion that Nguyen would understand that any "person" who represents him in this context would necessarily be an attorney. The exchange is all the more confusing because Father Dang tells Nguyen that a "person" would be appointed if Nguyen did not "have money to hire an <u>attorney</u>"—suggesting that the individual appointed free of cost would be someone other than an attorney. Given these difficulties in communication and understanding between the detective and Nguyen due to Father Dang's incorrect translation, I cannot conclude that Nguyen "minimally understood" his right to have an attorney present during questioning at no cost. <u>See Aguilar-Ramos</u>, 86 P.3d at 400–02.

¶ 35 Finally, I disagree with the majority's analysis in general because it considers each mistranslation in isolation and ignores the confusing nature of the advisement as a whole. Under this court's case law, we must consider the "<u>the totality of the circumstances</u>," <u>Mejia-Mendoza</u>, 965 P.2d at 780 (emphasis added), and "the <u>combined effects</u> of the translator's inadequate translation [and] the substantial miscommunication between the parties," <u>Redgebol</u>, 184 P.3d at 92 (emphasis added).

¶ 36 Even if I agreed with the majority's analysis regarding the first part of the advisement (where Detective Vacca initially advised Nguyen of his rights), the remainder of the advisement (where Detective Vacca asks Nguyen for a waiver) reveals Nguyen's confusion about his rights. Father Dang likely added to this confusion when he mistranslated not only Detective Vacca's questions and statements, but also several of Nguyen's responses:

DETECTIVE VACCA: Ok, so the second part of the advisement is knowing my right and knowing now what I am doing, I wish to voluntarily talk to me [sic], if you want to talk to me, you need to sign here ...

FATHER DANG: Yeah, and as I said earlier if you want to talk directly, to cooperate with the police then sign here or if you do not want to talk to the police, you want to hire an attorney to talk ...

DETECTIVE VACCA: If you ...

HUNG NGUYEN: To talk about what happen[ed] last night, right?

FATHER DANG: So you want me to tell you what had happened tonight, right?

DETECTIVE VACCA: If he want[s] to ...

FATHER DANG: If you want ... if you do not want then let the attorney to represent you ...

HUNG NGUYEN: To see a lawyer or to stay here now is the same ...

FATHER DANG: Ok, doesn't matter if I see an attorney or either I just rather talk to you ...

DETECTIVE VACCA: Ok, so I just want to be clear, you understand your Miranda rights and you don't have to talk to me, you can talk to a lawyer instead ...

FATHER DANG: Because we want you to understand that you have the right to hire an attorney to represent you and you do not need to answer us right now, understand?

HUNG NGUYEN: Understand

FATHER DANG: I don't understand

DETECTIVE VACCA: So you're perfectly ... you're perfectly clear on that?

FATHER DANG: Now you understand you have the right to talk to us or do you want to let an attorney to represent you, correct?

HUNG NGUYEN: Yeah

FATHER DANG: Yeah

DETECTIVE VACCA: Ok, and you still want to talk to me?

FATHER DANG: Now do you want to cooperate and talk to us or do you want to let an attorney ...

HUNG NGUYEN: But he wants to ask about last night and I have to tell him what happened ...

FATHER DANG: If you want to ask what happened tonight I will tell you ...

DETECTIVE VACCA: Ok, then he has to sign here

The majority does not address this part of the advisement in full, which occurred after the parts quoted in the majority opinion.

¶ 37 Viewed in its entirety, this exchange between Detective Vacca and Nguyen contains numerous mistranslations and undermines the majority's conclusion that Nguyen sufficiently understood his rights.

¶ 38 For example, Nguyen said, "[t]o see a lawyer or to stay here is the same." This statement indicates that he did not understand a lawyer would be provided for him before this particular questioning, or the nature of his right to have an attorney present during questioning. Compounding this misunderstanding, Father Dang translated Nguyen's statement as, "Ok, doesn't matter if I see an attorney or either I just rather talk to you." But importantly, Nguyen did not say that he would "rather" talk to the detective, as Father Dang translated. The most that could be said of Nguyen's actual statement is that it expressed ambivalence about talking to the detective or getting an attorney.

¶ 39 Additionally, when Detective Vacca asked Nguyen, "[Do] you still want to talk to me?" after trying to clarify that he understood his rights, Father Dang translated the question as, "Now do you want to cooperate and talk to us or do you want to let an attorney." Nguyen responded, "But he wants to ask about last night and I have to tell him what happened." (emphasis added). Nguyen's response demonstrates that he did not understand that he had the right to remain silent, or that he had the right to an attorney. Further, Father Dang translated Nguyen's response as, "If you want to ask what happened last night I will tell you." Similar to the mistranslation inaccurately suggesting Nguyen would "rather" talk with the detective, Father Dang's inaccurate translation of this response relayed a willingness or preference to speak to the detective that Nguyen did not in fact express.

¶ 40 Finally, Father Dang confusingly referred to Nguyen's right to have an attorney present as the right to "hire" an attorney, saying, "[O]r if you do not want to talk to the police, you want to hire an attorney to talk," and "[W]e want you to understand that you have the right to hire an attorney to represent you...." (emphases added). Thus, even if, as the majority reasons, Nguyen initially understood that an attorney would be appointed for him prior to questioning, Father Dang's continued mistranslation contradicted the information conveyed to Nguyen in the first part of the advisement. Although a defendant need not be advised whether he will ultimately bear any financial liability for an attorney appointed to assist him during interrogation, Miranda does require that a defendant be adequately advised that an attorney will be appointed for him if he cannot afford one. See Sanchez, ¶ 23, 329 P.3d at 261.

### III. Conclusion

¶ 41 Nguyen's responses and Father Dang's repeated mistranslations demonstrate that "each party frequently had no idea what the other was talking about." See Aguilar-Ramos, 86 P.3d at 402. Considering the totality of the circumstances, and the advisement as a whole, I would conclude that Nguyen did not "minimally understand" his Miranda rights, and therefore did not knowingly and intelligently waive them. See id. I therefore respectfully dissent.

I am authorized to state that JUSTICE HOOD and JUSTICE GABRIEL join in this dissent.